## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>MICHAEL DAVID SCOTT a/k/a The Crawford Group LLC a/k/a Macauley Family Realty Trust,<br><br>  Debtor. | CHAPTER 7<br><br>BANK. CASE NO. 17-70045-JAD |
| MICHAEL DAVID SCOTT,<br><br>  Plaintiff,<br><br>vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-AR7, OCWEN LOAN SERVICING, LLC, and KORDE & ASSOCIATES, P.C.,<br><br>  Defendants, | ADVERSARY NO. 17-07028 JAD |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-AR7, OCWEN LOAN SERVICING, LLC, and KORDE & ASSOCIATES, P.C.,<br><br>  Counter-Claimant,<br><br>  v.<br><br>MICHAEL DAVID SCOTT,<br><br>  Counterclaim-Defendant. | |

| | |
|---|---|
| MICHAEL DAVID SCOTT,<br><br>   Plaintiff,<br><br> v.<br><br>U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-AR7,<br><br>   Defendant. | ADVERSARY NO. 17-07050 JAD |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-AR7,<br><br>   Plaintiff,<br><br> v.<br><br>EUNICE M. SCOTT,<br><br>   Defendant. | ADVERSARY NO. 18-07005 |
| U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-AR7,<br><br>   Movant,<br><br> v.<br><br>MICHAEL DAVID SCOTT; EUNICE M. SCOTT,<br><br>   Respondents. | |

| | |
|---|---|
| MICHAEL DAVID SCOTT,<br><br>       Movant,<br><br>  v.<br><br>U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-AR7,<br><br>       Respondent. | |

**SUPPLEMENTAL BRIEF OF U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2004-AR7 IN SUPPORT OF <u>ITS REQUEST FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   LEGAL ARGUMENT ........................................................................................2

    A.    Jurisdiction ............................................................................................ 2

        1.    The Court's Jurisdiction Is Defined by Statute as of the Date the Case Is Filed ................................................................................ 2

        2.    The Court's Jurisdiction Is Divided into Core and Non-Core Matters ................................................................................. 3

            a.    The Claims Are Not within the Bankruptcy Court's Core Jurisdiction ................................................................3

            b.    The Claims Are within the Court's Related-to Jurisdiction ............5

    B.    STANDING ........................................................................................... 7

        1.    Trustee Has Standing to Enforce a Note and Mortgage under Massachusetts Law ................................................................. 7

III.   CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Bayer Bus. & Tech. Servs. v. AGR Premier Consulting, Inc. (In re AGR Premier Consulting, Inc.)*, 550 F. App'x 115 (3d Cir. 2014) ..................................................4

*Beard v. Braunstein,* 914 F.2d 434 (3d Cir. 1990) ..........................................5

*Binder v. Price Waterhouse & Co.*, 372 F.3d 154 (3d Cir. 2004) ...................................2

*Coraccio v. Lowell Five Cents Sav. Bank*, 415 Mass. 145, 612 N.E.2d 650 (1993) ......................6

*Deutsche Bank Nat'l Trust v. Moynihan*, No. CV 15-14155-MBB, 2016 U.S. Dist. LEXIS 98733, 2016 WL 4098579 (D. Mass. July 28, 2016) .................................10

*Eaton v. Fannie Mae,* 969 N.E.2d 1118 (2012)..........................................................9, 11

*In re Exide Techs.*, 544 F.3d 196 (3d Cir. 2008) ...........................................4

*Fay v. Cheney*, 31 Mass. 399, 14 Pick. 399 (1833) ..........................................7

*In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002) ...................................5

*Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999) ..........................................4-5

*In re Harborhouse of Gloucester, LLC*, 505 B.R. 365 (Bankr. D. Mass. 2014), *aff'd* 523 B.R. 749 (B.A.P. 1st Cir. 2014) ........................................ 10-11

*Lamson & Co. v. Abrams*, 305 Mass. 238 (1940)..........................................8

*Maglione v. BancBoston Mtge. Corp.*, 29 Mass. App. Ct. 88, 557 N.E.2d 756 (1990)..........................................................................8

*Metro Bank v. Kessler (In re Kessler)*, 430 B.R. 155 (Bankr. M.D. Pa. 2010) ........................5-6

*Morris v. Bacon*, 123 Mass. 58 (1877) ..........................................8

*Nuveen Mun. Tr. v. Withumsmith Brown, P.C.*, 692 F.3d 283 (3d Cir. 2012)...............................2

*In re Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)...........................................5

*Siskin Steel & Supply Co. v. Highland N. LLC*, No. 3:12-CV-105, 2013 U.S. Dist. LEXIS 270 (W.D. Pa. Jan. 2, 2013)..........................................7

*Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006) ..........................................3-4

*Torkelsen v. Maggio (In re Guild & Gallery Plus)*, 72 F.3d 1171 (3d Cir. 1996)......................4-5

*U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40 (2011) .................................... 7-9

*United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552 (3d
    Cir. 1999) ................................................................................................................................. 1

*Wolcott v. Winchester*, 81 Mass. 461, 15 Gray 461 (1860) ............................................................ 8

*Zullo v. HMC Assets*, LLC, 2017 Mass. LCR LEXIS 116 (Mass. Land Ct. 2017) ...................... 11

## Statutes

28 U.S.C. § 157 ......................................................................................................... *passim*

28 U.S.C. § 1334 ................................................................................................. 2-3, 8-7

G.L. c. 106, § 3-301 ............................................................................................................. 10

G.L. c. 106, § 3-309 ......................................................................................................... 10, 11

G. L. c. 183, § 21 ................................................................................................................... 9

G. L. c. 183, § 21.13 .............................................................................................................. 9

G. L. c. 244, §§ 11-17C ......................................................................................................... 9

G. L. c. 244, § 14 ................................................................................................................... 9

U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7 ("*Trustee*") hereby files it supplemental brief in support of its request for summary judgment pursuant to the Court's June 29, 2018 Order (ECF No. 135), and respectfully states as follows:

## I.    <u>INTRODUCTION</u>

This matter originally included three, but now two adversary proceedings, which are premised on Plaintiff Michael David Scott's ("*Plaintiff*") challenge to Trustee's standing to foreclose on Plaintiff's property located at 40 Old Stable Drive, Mansfield, MA 02048 ("*property*"), and Trustee's claim back against Plaintiff and his wife Eunice Scott ("Mrs. Scott").

The cases are (i) 17-07028-JAD, in which Plaintiff has sued the Trustee under Massachusetts state law to void the Mortgage and Note, and recover all the funds paid on the property, and the Trustee has asserted various counterclaims; (ii) 17-70045-JAD, in which Plaintiff has sued the Trustee under Massachusetts state law to void the Mortgage and Note to invalidate the mortgage, and the Trustee has asserted various counterclaims; and (iii) 18-07005-JAD in which the Trustee has sued Mrs. Scott on claims similar to those set forth against the Plaintiff (collectively, the forgoing claims are referred to herein as "*Claims*").  On June 29, 2018, the Court entered an order consolidating the first two actions, and reserving the question of whether the third action against Mrs. Scott should also be consolidated.

After hearings held on June 28, 2018, the Court afforded Trustee an opportunity to submit further briefing to convert its Motion to Dismiss (Case No. 17-7050 at ECF No. 8) into a motion for summary judgment ("*Order*").  ECF No. 135.  The Order sought briefing on two

topics (i) how the declaration of John W. Wildrick ("***Greenpoint Declaration***") (ECF No. 134)[1]

is dispositive of this Adversary; and (ii) the Court's subject matter jurisdiction under 28 U.S.C.

§§ 157 (b)(2)(O) and 1334(e) when the outcome of the litigation will affect the Plaintiff's

interest in the Property. ECF No. 135.  As set forth herein below, judgment should be entered in

favor of Trustee because:

> ***First***, the Court has related-to jurisdiction, as jurisdiction is determined by whether the Court has jurisdiction as of the inception of the proceeding;

> ***Second***, the Court has related to jurisdiction over all the claims; and

> ***Third***, Trustee has standing as it is appropriately acting on behalf of Greenpoint to enforce the Note and Mortgage as permitted under Massachusetts law.

## II.   LEGAL ARGUMENT

### A.   Jurisdiction

#### 1.   The Court's Jurisdiction Is Defined by Statute as of the Date the Case Is Filed

Jurisdiction is determined at the time a lawsuit is filed.  *Nuveen Mun. Tr. v. Withumsmith*

*Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012) *(citing Grupo Dataflux v. Atlas Global Grp., L.P.*,

541 U.S. 567, 570-71, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004) ("It has long been the case that

'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'"

(quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539, 6 L. Ed. 154 (1824))).

Two statutes, 28 U.S.C. §§ 1334 and 157, provide the source of a bankruptcy court's

jurisdiction.  *Binder v. Price Waterhouse & Co.*, 372 F.3d 154, 161 (3d Cir. 2004).

28 U.S.C. § 1334 states, in pertinent part:

---

[1]   On June 26, 2018, Trustee filed the Declaration of John W. Wildrick, Assistant Vice President of Greenpoint Mortgage Funding, Inc. which provided in part that Trustee is acting on behalf of GreenPoint as note holder.  ECF No. 134.

(a)  Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b)  Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

*Id.*  28 U.S.C. § 157 states, in pertinent part:

(b) (1)  Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments…

(c) (1)  A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected….

*Id.*

Thus, the jurisdiction of the Court throughout the proceeding is determined by reference to 28 U.S.C. §§ 1334 and 157 as of the inception of the proceeding.

### 2.    The Court's Jurisdiction Is Divided into Core and Non-Core Matters

### a.    The Claims Are Not within the Bankruptcy Court's Core Jurisdiction

"[B]ankruptcy jurisdiction extends to four types of title 11 matters: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (*citing In re Combustion Eng'g, Inc.,* 391 F.3d 190, 225 (3d Cir. 2005)).   The first three categories are "core proceedings," in which a bankruptcy court is statutorily permitted to enter final judgments, *see* 28 U.S.C. § 157(b)(1), whereas in a "related-to," or non-core proceeding, a

3

bankruptcy court may only "submit proposed findings of fact and conclusions of law to the district court[.]"  28 U.S.C. § 157(c)(1); *Bayer Bus. & Tech. Servs. v. AGR Premier Consulting, Inc. (In re AGR Premier Consulting, Inc.)*, 550 F. App'x 115, 122 (3d Cir. 2014).

The category of cases "under" title 11 refers merely to the bankruptcy petition itself. *Stoe*, 436 F.3d at 225-26 n.38 (quotation and citation omitted). A case "arises under" title 11 "if it invokes a substantive right provided by title 11." *Torkelsen v. Maggio (In re Guild & Gallery Plus)*, 72 F.3d 1171, 1178 (3d Cir. 1996).  The category of proceedings "arising in" bankruptcy cases "includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens." *Stoe*, 436 F.3d at 216. Proceedings "arise in" a bankruptcy case, "if they have no existence outside of the bankruptcy." *Id*. (quoting *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999)).

Cases within these first three categories fall within a Bankruptcy Court's core jurisdiction, and hence, a Bankruptcy Court can enter final orders as to such matters.  28 U.S.C. § 157(b)(1).

However, 28 U.S.C. § 157(b) does not give a precise definition to determine whether a proceeding is core "but rather . . . provides an illustrative list of proceedings that may be considered core." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). "It is important, however, that a court 'not simply [] apply the terms of the statute but rather [] analyze the nature of the underlying claim to determine whether, given constitutional constraints on bankruptcy jurisdiction . . ., that claim should be considered a core proceeding.' *In re Exide Techs.*, 544 F.3d 196, 207 (3d Cir. 2008) (quoting *Meadowlands Commc'n, Inc. v. Banker's Trust Co.*, 79 B.R. 198, 199–200 (D.N.J. 1987).  Thus, a claim might not be "core" even if it appears to fall within

4

one of the illustrative examples of 28 U.S.C. § 157(b)(2).  *See, e.g., In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996); *Beard v. Braunstein,* 914 F.2d 434, 444-45 (3d Cir. 1990) (finding that although the plaintiff could argue that the case fell within 28 U.S.C. § 157(b)(2)(E), a closer analysis led to a determination that the proceeding was not "core").

A proceeding, such as this one, which seeks to determine the validity or priority of a lien, arises under state law.  Thus, it is not a core matter despite the wording of 28 U.S.C. § 157(b)(2)(K), because it does not arise under the Bankruptcy Code, and can arise outside a bankruptcy case.  *See, e.g.*, *Metro Bank v. Kessler (In re Kessler)*, 430 B.R. 155, 162 (Bankr. M.D. Pa. 2010).

### b.      The Claims Are within the Court's Related-to Jurisdiction

A proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *see also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 381 (3d Cir. 2002) (noting that *Pacor* "clearly remains good law in this circuit" in this respect).  "The proceeding need not necessarily be against the debtor *or against the debtor's property*", as is the case here with respect to the Claims against Mrs. Scott  *Guild*, 72 F.3d at 1180-81 (emphasis added".  "'A key word in [this test] is *conceivable*. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate.'" *Id*. 72 F.3d at 1181 (quoting *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3d Cir. 1991)); *see also Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999).*   Here, all the Claims would affect either the Debtor's rights or liabilities.

5

The Claims are related to the bankruptcy case because the Claims brought by the Debtor could significantly reduce the Debtor's secured liabilities.  *Kessler*, 430 B.R. at 162.

The Claims brought against Debtor's wife are also related to the bankruptcy case.  At the time of filing, the property that is subject to U.S. Bank's mortgage was property of the estate. Any claim that would encumber such property would affect either the administration of claims in Debtor's bankruptcy case or the Debtor's rights in the property of the estate.  Debtor and his wife hold the property subject to U.S. Bank's lien by a tenancy of the entireties.  Moreover, both Debtor and his wife are obligors under the loan from U.S. Bank.  Under Massachusetts law, if U.S. Bank were to prevail on its equitable claims against either spouse, the entire property would be encumbered by the equitable lien sought by U.S. Bank.

> Merely because each spouse is "equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety," it does not follow that each has an equal one-half interest in the property. On the contrary, a tenancy by the entirety remains a unitary title, and the statute simply guarantees each spouse an equal right to the whole. Whatever the husband could do at common law, the wife now may do as well.

*Coraccio v. Lowell Five Cents Sav. Bank*, 415 Mass. 145, 151, 612 N.E.2d 650, 654 (1993) (*quoting In re Abdallah*, 39 B.R. 384, 387 (D. Mass.), *remanded*, *Drury v. Abdallah*, 46 B.R. 718 (D. Mass. 1984), *appeal dismissed*, 778 F.2d 75 (1st. Cir. 1985), *cert. denied sub nom. Drury v. Abdallah*, 476 U.S. 1116 (1986).  If U.S. Bank were to prevail on its equitable claim, then it would encumber what was, at the time of filing, property of the estate.  Therefore, the Claims against Debtor's wife also remain within the Bankruptcy Court's related-to jurisdiction.

The Court has related-to jurisdiction over all the Claims, and, controlling precedent dictates that it still has such jurisdiction.[2]

---

[2]    This is not to say that the Court must rule on the Claims.  Pursuant to 28 U.S.C. § 1334(c)(1) a Court, on its own motion, may abstain from a proceeding in the interest of justice,

B.    **STANDING**

1.    **Trustee Has Standing to Enforce a Note and Mortgage under Massachusetts Law**

Under Massachusetts law, a mortgagee can foreclose even if it does not physically hold

the note, so long as it acts on behalf of the note holder.  The law of mortgage in Massachusetts is

a mixed system, derived partly from the common law about real property, partly from the rules

and maxims of the English Courts of Chancery, but principally from various statutes.  *Fay v.*

*Cheney*, 31 Mass. 399, 14 Pick. 399, 400-401 (1833).

Under the common law, a real estate mortgage in Massachusetts has two distinct but

related aspects.  It is a transfer of legal title of the mortgage property.  It also serves as security

for an underlying note or other obligation *i.e.*, the transfer of title is made in order to secure a

debt, and the title is defeasible when the debt is paid.  *See U.S. Bank Nat'l Ass'n v. Ibanez*, 458

Mass. 637, 649, 941 N.E.2d 40 (2011) ("***Ibanez***") (Massachusetts is a "title theory" State in

---

comity with State Courts, or respect for State law.  *Id.*  In determining whether to abstain, the
Court should use the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court
> recommends abstention, (2) the extent to which state law issues predominate over
> bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the
> presence of a related proceeding commenced in state court or other non-bankruptcy court,
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of
> relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the
> substance rather than form of an asserted "core" proceeding, (8) the feasibility of
> severing state law claims from core bankruptcy matters to allow judgments to be entered
> in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's]
> docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy
> court involved forum shopping by one of the parties, (11) the existence of a right to a jury
> trial, and (12) the presence in a proceeding of non-debtor parties.

*Siskin Steel & Supply Co. v. Highland N. LLC*, No. 3:12-CV-105, 2013 U.S. Dist. LEXIS 270, at
*27-30 (W.D. Pa. Jan. 2, 2013) (citing *Geruschat, et al. v. Ernst & Young, LLP (In re Earned
Capital Corp.)*, 331 B.R. 208, 220 (Bankr. W.D. Pa. 2005)).

A quick perusal of such factors indicates that factors 1, 2, 3, 4, 5, 9, 10, and 12 would favor
abstention from all the Claims.  The other factors are neutral or irrelevant.

which "a mortgage is a transfer of legal title in a property to secure a debt"); *Maglione v. BancBoston Mtge. Corp.*, 29 Mass. App. Ct. 88, 90, 557 N.E.2d 756 (1990) ("So it is that the mortgagor retains an equity of redemption, and upon payment of the note by the mortgagor or upon performance of any other obligation specified in the mortgage instrument, the mortgagee's interest in the real property comes to an end" [citations omitted]).

Following from these principles, a mortgage separated from the underlying debt that it is intended to secure is "a mere technical interest." *Wolcott v. Winchester*, 81 Mass. 461, 15 Gray 461, 465 (1860); *see also Morris v. Bacon*, 123 Mass. 58, 59 (1877) ("That the debt is the principal and the mortgage an incident, is a rule too familiar to require citations in support of it"). In Massachusetts, a mortgage and the underlying note can be split. *See Lamson & Co. v. Abrams*, 305 Mass. 238, 245, 25N.E.2d 374 (1940) ("The holder of the mortgage and the holder of the note may be different persons").

Where a mortgage and note are separated, "the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment." *Ibanez*, 458 Mass. at 652, citing *Barnes v. Boardman*, 149 Mass. at 114; *see also Wolcott*, 15 Gray at 465 ("The party holding such legal estate [*i.e.*, mortgagee holding only mortgage without underlying note] no doubt holds the same in trust for the party owning the debt, where the entire debt secured by a mortgage has been parted with"). *See generally* 1 F. Hilliard, Mortgages at 216 n.(c) ("The assignment of a mortgage, without the debt, creates at most a naked trust" [emphasis in original]); *id*. at 217 ("[The mortgage] has no determinate value. If it should be assigned, the assignee must hold the interest at the will and disposal of the creditor who holds the bond").

8

Statutes play an especially significant role in connection with mortgage foreclosures effected under a power of sale. *See Ibanez*, 458 Mass. at 646, *quoting Moore v. Dick*, 187 Mass. 207, 211, 72 N.E. 967 (1905) ("one who sells under a power [of sale] must follow strictly [statutory] terms"). The "statutory power of sale" is set out in G. L. c. 183, § 21.13. Under this statute, if a mortgage provides for a power of sale, the mortgagee, in exercising the power, may foreclose without obtaining prior judicial authorization "upon any default in the performance or observance" of the mortgage. G. L. c. 244, § 14 provides in relevant part:

> The mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, . . . may, upon breach of condition and without action, do all the acts authorized or required by the power; but no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, [the notice provisions set forth in this section are followed….

*Id*.

In *Eaton v. Fannie Mae,* 969 N.E.2d 1118, 1130-1133 (2012), the court construed the term "mortgagee" in G. L. c. 244, § 14, to mean a mortgagee who also holds the underlying mortgage note or acts on behalf of the note holder. The Court in *Eaton* clarified that a foreclosing mortgagee does not have to have physical possession of the mortgage note in order to effect a valid foreclosure. *Id*. Rather, the Court interpreted G. L. c. 244, §§ 11-17C (and particularly § 14), and G. L. c. 183, § 21, to permit one who, although not the note holder himself, acts as the authorized agent of the note holder, to stand "in the shoes" of the "mortgagee" as the term is used in these provisions. *Id*. at 1134 ("We have focused principally on the statutes governing mortgage foreclosure by sale and have concluded that where a mortgagee acts with the authority and on behalf of the note holder, the mortgagee may comply with these statutory requirements without physically possessing or actually holding the mortgage note.")

9

This case presents an additional issue because the note is lost. The effect of a Lost Note Affidavit is governed by G.L. c. 106, § 3-309. This section provides the only exception to G.L. c. 106, § 3-301's[3] requirement that the original instrument be produced in order to enforce it. Section 3-309 states:

> (a)      A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
>
> (b)      A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, section 3-308 applies to the case as if the person seeking enforcement had produced the instrument...

G.L. c. 106, § 3-309.[4]

Thus, G.L. c. 106, § 3-309 requires the person attempting to enforce a lost note to have been in possession of the note when it was lost.

---

[3]      Section 3-301 provides: "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309 or subsection (d) of section 3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

[4]      The language of G.L. c. 106, § 3-309, is that of the 1990 version of § 3-309 in Article 3 of the Uniform Commercial Code (UCC). Massachusetts, did not adopt the UCC amendment to § 3-309 in 2002 omitting the possession requirement and to require only an entitlement to enforce the instrument when the instrument was lost or the acquisition of ownership from a person who was so entitled, either directly or indirectly. *See Deutsche Bank Nat'l Trust v. Moynihan*, No. CV 15-14155-MBB, 2016 U.S. Dist. LEXIS 98733, 2016 WL 4098579, at *11 (D. Mass. July 28, 2016); *In re Harborhouse of Gloucester, LLC*, 505 B.R. 365, 372 (Bankr. D. Mass. 2014), *aff'd* 523 B.R. 749 (B.A.P. 1st Cir. 2014) (under Massachusetts law there is a requirement of actual possession of the negotiable instrument at the time of loss in order for a party to enforce the instrument).

> Actual possession at the time of loss as a requirement of enforcement of a negotiable instrument under § 3-309 provides an objective method to determine a party's right to enforce a negotiable instrument and provides a reliable means to determine the parties' rights. By setting an actual possession requirement, parties on both sides have a clear and established standard. The maker of the note is protected from multiple claims of its ownership and enforcement of the note is still possible by the party who lost it.

*Harborhouse of Gloucester, LLC*, 505 B.R. 365, 372 (Bankr. D. Mass. 2014), *aff'd* 523 B.R. 749

(B.A.P. 1st Cir. 2014).

In *Zullo v. HMC Assets*, LLC, 2017 Mass. LCR LEXIS 116, at *22 (Mass. Land

Ct. 2017), the Court discussed enforcement of the loan documents where a note is lost,

and following the holding in *Eaton*, held that that a party could enforce a lost note where

it shows it is acting on behalf of the note holder. *Zullo* at 25 ("HMC has presented no

evidence that DLJ ever authorized HMC to act on its behalf in enforcing the Note.").

Here, Greenpoint was in possession of the Note when it was lost. ECF No. 134 at

¶ 14. Thus, under G.L. c. 106, § 3-309(a), Greenpoint is the note holder. As the note

holder, Greenpoint has authorized US Bank to act as its agent to enforce the Note and

related Mortgage. ECF No. 134 at ¶ 16. Therefore, as assignee of the mortgage, and

agent to the note holder, US Bank has standing to enforce the loan documents and the

remedies provided for thereunder, including but not limited to, foreclosure.

Greenpoint has the authority to appoint US Bank as its agent under Article 3.01 of

the Pooling and Servicing Agreement ("**PSA**").[5]  The PSA defines Greenpoint as a

Servicer. It provides that

> [i]n connection with such servicing and administration of the Mortgage Loans, the Master Servicer and each Servicer shall have full power and authority, acting alone and/or through Subservicers as provided in Section 3.02 hereof, to do or

---

[5] Due to the size of the PSA, Trustee attaches the relevant provision as **Exhibit A.** Trustee can make the entire PSA available and/or file if the Court so desires.

11

cause to be done any and all things that it may deem necessary or desirable in connection with such servicing and administration, including but not limited to, the power and authority, subject to the terms hereof (i) to execute and deliver, on behalf of the Certificateholders and the Trust, customary consents or waivers and other instruments and documents (ii) to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages…(iv) to effectuate foreclosure or other conversions of the ownership of the Mortgaged Property securing any Mortgage Loan…

Ex. A - PSA at Section 3.01.  Thus, Greenpoint has the authority to appoint U.S. Bank as its agent, and, in fact, has appointed U.S. Bank as its agent.  ECF No. 134 at ¶ 14-16.  U.S. Bank, acting as the agent for the entity that lost the Note, has the authority to enforce the Note on behalf of Greenpoint.

## III.   <u>CONCLUSION</u>

Based on the foregoing, Trustee has established that the Court has jurisdiction over this Adversary and that Trustee has standing to enforce the loan documents pursuant to Massachusetts law.  Thus, the entire basis of this Adversary – Plaintiff's challenge to Trustee's standing to enforce the Note and Mortgage – is resolved, with no genuine issue of material fact remaining at issue.  Accordingly, Trustee respectfully requests that the Court enter judgment in Trustee's favor, and for such other relief as the Court deems just and proper because:

*First*, the Court has related-to jurisdiction over all the claims; and

***Second***, Trustee has standing as it is appropriately acting on behalf of Greenpoint to enforce the Note and Mortgage as permitted under Massachusetts law.

Dated: July 19, 2018                              Respectfully submitted,

                                                  ___/s/ Brett L. Messinger_____
                                                  Brett L. Messinger
                                                  Duane Morris LLP
                                                  30 South 17th Street
                                                  Philadelphia, PA 19103
                                                  Telephone:    (215) 979-1000
                                                  Email: BLMessinger@duanemorris.com

                                                  *Attorneys for U.S. Bank, National*
                                                  *Association, as Trustee for Credit Suisse*
                                                  *First Boston Mortgage Securities Corp.,*
                                                  *Mortgage Pass Through Certificates, Series*
                                                  *2004-AR7*

13