# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>MICHAEL DAVID SCOTT A/K/A THE CRAWFORD GROUP LLC A/K/A MACAULEY FAMILY REALTY TRUST,<br><br>       Debtor. | CHAPTER 7<br><br>BANK. CASE NO. 17-70045-JAD |
| MICHAEL DAVID SCOTT,<br><br>       Plaintiff,<br><br>   v.<br><br>U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-AR7 (U.S. BANK); GREENPOINT MORTGAGE FUNDING, INC.; JOHN W. WILDRICK (AFFIANT, GREENPOINT); DLJ MORTGAGE CAPITAL INC.; SONY PRUDENT; OCWEN LOAN SERVICES INC. (AFFIANT, OCWEN); CAPITAL ONE,<br><br>       Defendants. | ADVERSARY NO. 17-07028 JAD |

**TRUSTEE'S BRIEF RE: FEBRUARY 21, 2019 HEARING**

U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7 ("*Trustee*") hereby provides, pursuant to the Court's instructions at the hearing held on February 21, 2019 ("*Hearing*"), answers to the following questions: (1) whether the Mrs. Scott's bankruptcy discharge extinguished all of her mortgage obligations; (2) whether equitable lien and subrogation are enforceable in bankruptcy; and (3) the elements of a promissory note.

**I.      INTRODUCTION**

1. The Court asked Trustee if Mrs. Scott's bankruptcy discharged her obligations under the Correction Agreement executed contemporaneously with the Note and Mortgage. Hr'g. Tr. 25:13-15. The Court also asked if "subrogation in equitable liens" are "enforceable in a bankruptcy context." *Id.* at 27:18-19. In addition, the Court asked if loan modification agreements between the Scotts and Trustee are promissory notes. *Id.* at 28:19-29:2.

2. This brief addresses the Court's questions.

**II.     FACTS**

**A.     Mr. and Mrs. Scott's Obligations to Greenpoint in Exchange for a Mortgage on the Property**

3. Eunice M. Scott ("***Mrs. Scott***") financed her purchase of real property located at 40 Old Stable Dr., Mansfield, MA 02048 ("***Property***") by executing a note and mortgage ("***Original Mortgage***") in favor Greenpoint Mortgage Funding, Inc. ("***Greenpoint***").[1] The next year, she and her husband, Michael David Scott ("***Plaintiff***", and collectively with Mrs. Scott, "***Scotts***"), refinanced their mortgage, again with Greenpoint. As part of the refinancing, Greenpoint lent the Scotts $636,000, pursuant to a promissory note ("***Note***"), and paid off the Scotts' original mortgage obligation of $635,208.12. Compl. ¶ 13, Exh. C.

4. In exchange, the Scotts granted Greenpoint a mortgage on the Property ("***Mortgage***"), and executed a "Correction Agreement" by which they agreed remedy any documentary deficiencies in the loan documents. Compl., Exh. B. Greenpoint then promptly lost the Note. ECF No. 134 at ¶ 14. The Mortgage, and all subsequent assignments, were

---

[1] Trustee's loan history with Mr. and Mrs. Scott's loan history is explained more thoroughly in its complaint, Adv. No. 18-07005-JAD at ECF No. 1, incorporated herein by reference.

2

recorded timely and properly.  Compl. ¶ 26, Exhs. E-F.  Trustee is Greenpoint's agent.  ECF No. 134 at ¶ 16.

5.  Mrs. Scott filed a chapter 13 bankruptcy case on October 8, 2010, in the District of Massachusetts, case number 10-21047.  She listed the Property as her residence and asset on her bankruptcy petition, and BAC Home Loans Servicing, LP (Trustee's predecessor), as its secured creditor.  Case No. 10-21047, ECF No. 1 (Bankr. D. Mass 2010).  Mrs. Scott converted her case to chapter 7 on January 24, 2011.  Case No. 10-21047, ECF No. 36 (Bankr. D. Mass 2010).  The bankruptcy court discharged Mrs. Scott on April 26, 2011.  The discharge order states:

> [A] creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.

Case No. 10-21047, ECF No. 50 (Bankr. D. Mass 2010).

6.  On June 1, 2013, Mr. and Mrs. Scott modified the Loan ("***2013 LMA***").  The 2013 LMA altered the Mortgage and note (collectively, "**Loan Documents**") to reflect Mrs. Scott's discharge[2].  It provides:

> I received a discharge in a Bankruptcy proceeding after the execution of the Loan Documents.  Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

Compl., Exh. H at 1.E.

7.  Moreover, the 2013 LMA permanently forgave the existing deficiency of $26,266.89.  2013 LMA 3.B.  In addition, the 2013 LMA reduced Mrs. Scott's interest rate to 2%.  2013 LMA 3.D.

---

[2] Although the 2013 LMA was between Bank of America, N.A. ("BofA"), and the Scotts, the record shows that BofA was acting as the agent and servicer for the Trustee, as Ocwen is here.  ECF No. 134-1 at 4; ECF No. 117-2 at pgs. 30-35; ECF No. 117-2 at pgs. 20-28.  Therefore, no assignment of interest under the 2013 LMA was necessary for the Trustee to enforce its terms.

3

8. Other than as modified by her discharge, the Loan Documents remained valid:

> All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by and will comply with all of the terms and conditions of the Loan Documents.

Compl., Exh. H at 4.E.

9. The Correction Agreement is a Loan Document unaffected by the discharge and remains in full force and effect. Mrs. Scott agreed in the Correction Agreement to "execute, acknowledge, initial, and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s)". Compl., Exh. D.

10. On May 18, 2017, having made no loan payments in over three years, Plaintiff sued Trustee to declare the Mortgage invalid, claiming, "Greenpoint Mortgage was never in possession of the note." Adv. No. 17-07028, ECF No. 1. This particular allegation is contradicted by the evidence. ECF No. 134, Exh. B. Plaintiff's other contentions are baseless.

11. Trustee sued Mrs. Scott on January 29, 2018. Trustee asserted three causes of action. First, Trustee seeks specific performance from Mrs. Scott requiring her, among other things, to execute duplicates of the loan documents to enforce its foreclosure rights. Second and third, Trustee seeks an equitable lien or subrogation as an alternative remedy if the Court invalidated the mortgage. In its Complaint, Trustee did not seek any sort of *in personam* relief. Adv. No. 18-07005, ECF No. 1.

III. **ARGUMENT**

    A. **Trustee Can Enforce Its Security Interest, which Survived Mrs. Scott's Discharge**

12. A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2). The meanings of "debt" and "claim" are coextensive. *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990). A claim is a "right to payment". *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411 (2017); 11 U.S.C. § 101(5).

13. Most mortgage interests survive a bankruptcy discharge. *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). A mortgage is "an interest in real property that secures a creditor's right to repayment" where "the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation[.]" *Id.* Generally, "the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally." *Id.*

14. A chapter 7 discharge extinguishes "only one mode of enforcing a claim – namely, an action against the debtor *in personam*[.]" *Id.* at 83. If valid liens have not been disallowed or avoided, they survive the debtor's *in personam* discharge. *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 188 (3d Cir. 1987). After extinguishing the creditor's right to proceed against the debtor personally, post-discharge, a mortgage "has the same properties as a non-recourse loan." *Johnson*, 501 U.S. at 86; *c.f. Dewsnup v. Timm*, 502 U.S. 410, 417 (1992) (finding that lien-avoidance under Section 506(a) "applies only to the security aspect of the lien and then only to the real deficiency in the security."). Consequently, a creditor's attempt to enforce its post-discharge lien rights cannot violate the discharge injunction.

5

*In re Cusato*, 485 B.R. 824, 828 (Bankr. E.D. Pa. 2013). Plaintiff's Complaint does not question this essential starting point. It merely questions whether Trustee is the proper party to enforce the lien.

15. Here, Mrs. Scott obtained a discharge on April 26, 2011. Case No. 10-21047, ECF No. 50 (Bankr. D. Mass 2010). The discharge order summarizes the discharge's limited impact on mortgages: "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case." *Id*. at p. 2.

16. Under *Johnson*, the Mortgage passed through the bankruptcy mostly unaffected. Mrs. Scott's personal liability for any future deficiency is Trustee's only Mortgage right extinguished by her discharge. Trustee remains entitled to foreclose on the Property and rely on the Mortgage to enforce its foreclosure right.

17. The Correction Agreement is a document intended to aid Trustee in its enforcement of Trustee's foreclosure right under the Mortgage. It requires Mrs. Scott to "execute, acknowledge, initial, and/or deliver" any lost or inaccurate Loan Documents Trustee uses to enforce its foreclosure rights. The Correction Agreement requires no recovery against a discharged debtor nor imposes financial costs on Mrs. Scott.

18. Indeed, Trustee expressly disavowed any *in personam* relief against Mrs. Scott in the 2013 LMA, which states "Lender agrees that [Mrs. Scott] will not have personal liability on the debt pursuant to this Agreement." Compl., Exh. H at 1.E. Given that acknowledgement by the Trustee, it is difficult to see how its action to enforce the Mortgage could be characterized as asserting a discharged *in personam* liability against Mrs. Scott. Trustee is not seeking damages against Ms. Scott for failing to comply with the Correction Agreement; it is seeking specific

6

performance, in the alternative of which, Trustee has no right to damages, and hence, no claim against Mrs. Scott. Because the Trustee no longer has a right to damages for failing to perform, it is also difficult to see how the request for specific performance could be characterized as a claim discharged in Ms. Scott's bankruptcy.

19.   Enforcement of the Correction Agreement provides for no *in personam* relief against Mrs. Scott. It is part of Trustee's surviving *in rem* rights against the Property. As such, Mrs. Scott's discharge has no impact on Trustee's rights under the Correction Agreement.

### B.   Equitable Remedies Are Enforceable in Bankruptcy

20.   After further consideration, given that Plaintiff has asserted no argument that the Mortgage is invalid, and only that Trustee is not the proper party to enforce the Note and Mortgage, the Court will not invalidate the Mortgage even if Plaintiff prevails. Hence, Trustee is holding in abeyance any claims that it is entitled to an equitable lien and equitable subrogation to the prior lien. There is no dispute that the Mortgage exists and may be enforced; Plaintiff's primary dispute is that Greenpoint, not Trustee, is entitled to enforce it.

21.   However, if the Court were to decide that the Mortgage is void, and may not be enforced by either Greenpoint or Trustee, then Trustee would be entitled to the asserted equitable remedies, and such *in rem* remedies survived Mrs. Scott's discharge, as set forth in the following footnote.[3]

---

[3]   Property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Hence, in bankruptcy, equitable lien rights are enforceable to the degree allowed by state law. *Lewis v. Diethorn*, 893 F.2d 648, 650 (3d Cir. 1990) (reversing bankruptcy court and holding that trustee's avoidance powers are subject to equitable liens). "[T]he Third Circuit recognizes both equitable subrogation and state subrogation laws in a bankruptcy context." *In re LTC Holdings, Inc.*, No. 14-11111 (CSS), 2019 WL 454119, at *7 (Bankr. D. Del. Feb. 4, 2019); *see In re Modular Structures, Inc.*, 27 F.3d 72, 77 (3d Cir. 1994); *In re Stambaugh*, 532 B.R. 572, 575 (Bankr. M.D. Pa. 2015) ("I note that equitable subrogation, a state law doctrine, is an available remedy in bankruptcy courts.") Thus, if the Court invalidates Trustee's mortgage, as discussed below, because Massachusetts law would remedy the Plaintiff's. and Mrs. Scott's unjust enrichment by imposing an equitable lien or equitable subrogation, the Court should award such remedy here. Equitable liens aim to prevent unjust enrichment. *Lewis*, 893 F.2d at 650. "It is the general rule that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of

7

C. **The 2013 Loan Modification Agreement Is A Promissory Note that Replaced the Note**

22. A promissory note is a negotiable instrument under Massachusetts law. A negotiable instrument is an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Mass. G.L. c. 106, § 3-104(a). A "promise" means a written undertaking to pay money signed by the person undertaking to pay. Mass. G.L. c. 106, § 3-103(9). A negotiable instrument is a "note" if it is a promise and a "draft" if it is an order. Mass. G.L. c. 106, § 3-104(e). Thus, a

---

intervening lienors have not been affected." *N. Easton Co-op. Bank v. MacLean*, 5 N.E.2d 241, 245 (Mass. 1938).; *Westall v. Wood*, 99 N.E. 325, 326 (Mass. 1912). Thus, Massachusetts courts grant equitable liens where the parties entered into a mortgage but the underlying mortgage is unenforceable. *Keville v. McKeever*, 675 N.E.2d 417, 431 (App. Ct. Mass. 1997). Trustee holds a valid mortgage against the Property, notwithstanding Plaintiff's vexatious contentions. Nevertheless, if the Court were to void the Mortgage, Trustee would be entitled to an equitable lien. The Mortgage reflects the parties' intent that Greenpoint receive a security interest in the Property in exchange for a $636,000 loan.

"Subrogation aims to avoid unjust enrichment." *Greater New York Mut. Ins. Co. v. N. River Ins. Co.*, 85 F.3d 1088, 1095 (3d Cir. 1996). "Subrogation allows one party who paid the debt of another to be entitled to the rights, remedies, or security enjoyed by the original creditor, provided an injustice would not be imposed on any junior lienholder." *Wells Fargo Bank v. Nat'l Lumber Co.*, 918 N.E.2d 835, 839 (Mass. 2009). "The right to subrogation rests upon equity." *Massachusetts Hosp. Life Ins. Co. v. Shulman*, 12 N.E.2d 856 (Mass. 1938). Courts equitably subrogate interests if: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder." *Ogan*, 701 N.E.2d at 334 (citation and internal quotation marks omitted). Subrogation is a broad remedy that "may apply even where one or more of these factors is absent." *Id.* All of these factors are satisfied here. Trustee's predecessor paid Plaintiff's and Mrs. Scott's obligation to ensure its secured mortgagee position. Trustee's predecessor made this payment as part of its agreement with Plaintiff and Mrs. Scott, not as a charitable act. Trustee's predecessor paid to substitute as the lienholder for Plaintiff and Mrs. Scott's debt, not satisfy any debt Trustee's predecessor owed Greenpoint. Trustee's predecessor paid off Plaintiff's and Mrs. Scott's entire obligation with Greenpoint. Fifth, subrogation restores the status quo, and Trustee's predecessor properly recorded its lien.

8

document is a promissory note if it: (i) is a writing; (ii) sets forth an unconditional promise to pay a fixed amount of money; (iii) is signed; (iv) is payable at a definite time; (v) does not require to promisor to pay the note other than by money; and (vi) is payable.

23.     The 2013 LMA is a new promissory note.  The 2013 LMA (i) is a writing; (ii) it sets forth the Scotts' unconditional promise to pay a fixed amount of money (*i.e.* $686,535.89 plus interest) (Compl., Exh. H at 3.A); (iii) is signed by the Scotts (*d.* at p. 11); (iv) is payable on the first of the month and matures 21 years from June 1, 2019 (*Id.* at 3.D); (v) does not provide for any other undertaking other than the payment of money (*See id.*); and (vi) is payable to Lender, and its successors and assigns, including Trustee *(Id. at 3.F)*.

24.     The Court also noted that "if the indebtedness which your client is looking to enforce is something other than the original note, you're relying upon some other instrument which your client is claiming is secured by the mortgage, you need to tie that other instrument into the granting of security in the mortgage[.]" Hr'g. Tr. 31:21-25. The 2013 LMA amends the obligations set forth under the Mortgage.  It states:

> This loan Modification Agreement ("Agreement"), effective on the date set forth below, between Eunice M James-Scott and Michael David Scott, (the "Borrower(s)") and Bank of America, N.A. ("Lender") amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 26 day of April 2004 and in the amount of $636,000.00, and (2) the Note bearing the same date as, and secured by, the Security Instrument (the "Note") which covers the real and personal property described in the Security Instrument and defined therein as in the "Property", located at 40 Old Stable Dr., Mansfield, MA 02048.

Compl., Exh. H.  Hence, the obligations under the 2013 LMA are secured by the Mortgage.  No assignment of the 2013 LMA was necessary, because BofA was acting as the servicer and agent for the Trustee.  The obligations of the Scotts under the 2013 LMA are to the Trustee.  Here, Ocwen, as the agent and servicer for the Trustee, is attempting to enforce the 2013 LMA.

25. Moreover, the 2013 LMA replaced the Note in a novation. Novation requires: (1) an existing obligation between the parties; (2) an agreement between the parties to a new contract; and (3) the agreement to extinguish the prior contract. *King v. Am. Powder Co.*, 195 N.E. 785, 787 (Mass. 1935); *Zurich Am. Ins. Co. v. Watts Regulator Co.*, 860 F. Supp. 2d 78, 90 (D. Mass. 2012).

26. The Note was the existing obligation. The parties agreed to a new promissory note, *i.e.*, the 2013 LMA. By agreeing to a new promissory note, *i.e.*, the 2013 LMA, the parties replaced the Note. Therefore, the 2013 LMA's terms "supersede any provisions to the contrary in the Loan Documents, and previous loan modification". Compl., Exh. H at 3.D.

### IV. CONCLUSION

In sum, (1) Trustee may enforce the Correction Agreement as part of its *in rem* foreclosure rights that survived Mrs. Scott's discharge; and (2) the 2013 LMA is a promissory note under which the Scotts are obligated to the Trustee.

Dated: March 21, 2019

Respectfully submitted,

  /s/ Brett L. Messinger
Brett L. Messinger
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Facsimile:  (215) 979-1020
Email: BLMessinger@duanemorris.com

*Attorneys for US Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp. Mortgage Backed Pass Through Certificates Series 2004-AR-7*