## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 17-70045-JAD |
| | ) | |
| MICHAEL DAVID SCOTT, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| ——————————————X | | |
| | ) | |
| MICHAEL DAVID SCOTT, | ) | Adversary Nos. 17-07028-JAD |
| a/k/a The Crawford Group, LLC | ) | & 17-07050-JAD (consolidated |
| a/k/a MaCaulay Family | ) | 17-07028-JAD) |
| Realty Trust, | ) | |
| | ) | Related to ECF No. |
| Plaintiff, | ) | at 17-07028-JAD, ECF No. 1 |
| | ) | at 17-07050-JAD, ECF Nos. 1, 8 |
| -v- | ) | |
| | ) | |
| U.S. BANK, NATIONAL | ) | |
| ASSOCIATION, as Trustee for | ) | |
| Credit Suisse First Boston | ) | |
| Mortgage Securities Corp., | ) | |
| Mortgage Backed Pass Through | ) | |
| Certificates, Series 2004-AR-7, | ) | |
| KORDE & ASSOCIATES, P.C., | ) | |
| and OCWEN LOAN SERVICING, | ) | |
| LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————X | | |

## <u>MEMORANDUM OPINION</u>

By this Adversary Proceeding, the Court is called upon to determine whether, under Massachusetts law, the mortgagee in this case is entitled to foreclose upon the debtor's residence. The debtor contends that the putative mortgagee does not have standing to foreclose due to, *inter alia*, defects associated with the mortgagee's receipt (or faulty receipt) of an assignment of the underlying note executed by the debtor and his non-debtor spouse.

As a result of the putative mortgagee's efforts to effectuate a power of sale in the face of the alleged defects, the debtor further contends that there should be adverse consequences imposed upon the mortgagee. The consequences sought by the debtor in this Adversary Proceeding include the avoidance of the mortgagee's lien, compensatory damages, and punitive damages.

The defendant mortgagee avers that it has standing to foreclose and seeks summary judgment asserting the same. Prior to seeking summary judgment, the defendant also questioned this Court's subject-matter jurisdiction based on the fact that the outcome of this matter will have no conceivable effect on the bankruptcy estate being administered before this Court.  The mortgagee raised this question because the residence at issue has been exempted by the debtor and abandoned by the bankruptcy trustee.

For the reasons set forth below, the Court finds that the mortgagee's jurisdictional defense is persuasive and that the Court does not have the requisite subject-matter jurisdiction.

Even if this Court had the requisite jurisdiction, the Court would nonetheless also conclude that pursuant to the undisputed facts presented by the parties herein, the mortgagee does have the requisite standing to enforce the note and to effectuate a foreclosure on the debtor's residence.  Under these circumstances, the debtor's claim for relief fails and summary judgment should be entered in favor of the mortgagee.

## I.
## Background

While this case has been inundated with extensive filings by all parties,

the underlying facts are not overly complicated. Nor are they materially controverted. Rather, the complexity of this case has been drawn out by the multiple pleadings filed of record, coupled with the confusing manner in which the mortgagee has set forth the chain of title as to its secured interest. Fortunately for all parties and the Court, the record is now robust enough for the Court to ascertain the pertinent chain of title, and a chart summarizing the chain of title is annexed hereto as <u>Appendix A</u>.

The record also enables the Court to determine this matter on the merits. The record reflects that the debtor, Mr. Michael David Scott ("<u>Mr. Scott</u>" or the "<u>Debtor</u>"), was an inmate housed at the Federal Corrections Institute located in Loretto, Pennsylvania. Mr. Scott filed his bankruptcy petition with this Court on January 25, 2017, and subsequent to the commencement of this bankruptcy case he was transferred to the Federal Corrections Institute in Ayer, Massachusetts. One of the assets scheduled by Mr. Scott in this bankruptcy is his entireties interest in residential real property located at 40 Old Stable Drive, Mansfield, Massachusetts 02048 (the "<u>Stable Property</u>"), where his non-debtor wife, Mrs. Eunice James-Scott ("<u>Mrs. James-Scott</u>"), currently resides.

The filing of this Adversary Proceeding was prompted by the filing of a motion for relief from the automatic stay on April 21, 2017 by the putative mortgagee and defendant: U.S. Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage-Backed Pass Through

Certificates, Series 2004-AR7 ("U.S. Bank").[1] See *Motion of U.S. Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage-Backed Pass Through Certificates, Series 2004-AR7 for Relief from the Automatic Stay Under §362 Pursuant to Bankruptcy Procedure Rule 4001* (the "Motion for Relief From Stay"), 17-70045-JAD, ECF No. 106.

In connection with the relief from stay proceedings, U.S. Bank contended that it was the mortgagee with respect to the Stable Property. Since this case is a liquidation case under chapter 7 and not a reorganization case under other chapters of the Bankruptcy Code (thereby rendering the Stable Property not necessary for an effective reorganization), U.S. Bank contended in the Motion for Relief From Stay that it was entitled to relief because Mr. Scott had not made any payments on account of his mortgage obligations since 2014 (which was prior to Mr. Scott's incarceration).

U.S. Bank also contended that the Debtor had little or no equity in the Stable Property since (a) Mr. Scott averred that the property in question was worth $764,490, (b) U.S. Bank was owed in excess of $714,000 as of March of 2017, and (c) the lien interests of various junior lien holders, including the

---

[1]    In addition to U.S. Bank, former counsel to the mortgagee, Korde & Associates, P.C., is captioned as a defendant to this action. Also captioned as a defendant is Ocwen Loan Servicing, LLP. By order dated August 2, 2017, the Adversary Proceeding was dismissed as to Korde & Associates, P.C. See 17-07028-JAD, ECF No. 51. Inasmuch as Ocwen Loan Servicing, LLP is the alleged servicer of the loan, and is a current co-defendant, the findings and conclusions set forth in this Memorandum Opinion apply equally to Ocwen Loan Servicing, LLP. As such, dismissal of the Adversary Proceeding as provided for in this Memorandum Opinion shall apply to Ocwen Loan Servicing, LLP.

Internal Revenue Service, consume whatever little equity that remained against the premises.[2]

U.S. Bank therefore contended that ample "cause" existed for the Court to grant U.S. Bank relief from the automatic stay so that U.S. Bank could pursue *in rem* relief with respect to the Stable Property. <u>See</u> 11 U.S.C. §§ 362(d)(1) and 362(d)(2).

Mr. Scott opposed U.S. Bank's Motion for Relief From Stay. Mr. Scott's defense rested primarily on standing grounds. That is, Mr. Scott contended that the underlying Note[3] for the loan obligation to U.S. Bank was lost shortly after the closing on the loan, and that U.S. Bank (as an assignee of the loan) lacked an ability to enforce the lost Note. Given the lost Note, Mr. Scott argued that U.S. Bank lacked standing to both prosecute the Motion for Relief From Stay and foreclose against the Stable Property.

At the June 2, 2017 hearing on the Motion for Relief From Stay, the Court was not persuaded by Mr. Scott's arguments. The Court was not convinced for a number of reasons. While not stated expressly on the record at

---

[2]    Mr. Scott has made no payments to U.S. Bank during the pendency of this bankruptcy case. The continued accrual of interest coupled with lack of payment also serves to eliminate any equity as well.

[3] The underlying note is the *Adjustable Rate Note* dated April 26, 2004 executed by the Debtor and Mrs. James-Scott (the "<u>Note</u>"). <u>See</u> Exhibit "A" to the *Defendants U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7 and Ocwen Loan Servicing, LLC's Amended Answer to Debtor's Complaint with Counterclaims* (the "<u>Amended Answer</u>"), 17-07028-JAD, ECF No. 101-1. The Note is secured by a *Mortgage* (the "<u>Mortgage</u>") executed that same day by the Debtor and Mrs. James-Scott and identifying the Stable Property as subject to the Mortgage. <u>See</u> Exhibit "B" to the Amended Answer.

the June 2, 2017 hearing, one reason why the Court was not persuaded by Mr. Scott's arguments was the fact that creditors of a debtor have standing to ask for relief from the automatic stay and that the term "creditor" in the Bankruptcy Code includes a creditor asserting a "disputed claim." Compare 11 U.S.C. § 101(5) with 11 U.S.C. § 101(10).

Recognizing that "cause" for granting stay relief is discretionary and turns on the totality of the circumstances, see e.g. In re Brown, 290 B.R. 415 (Bankr. M.D. Fla. 2003) and Egwineke v. Robertson (In re Robertson), 244 B.R. 880 (Bankr. N.D. Ga. 2000), this Court granted U.S. Bank relief from the automatic stay at the conclusion of the June 2, 2017 hearing.

In balancing the interests of Mr. Scott against the putative interests of U.S. Bank, this Court observed at the June 2, 2017 hearing that Mr. Scott acknowledged that he executed various loan modification agreements in favor of the putative mortgagee prior to his bankruptcy filing. See e.g., Bayview Loan Servicing, LLC v. Warter, No. 673-2013, 2017 WL 3296531, at *4 (N.Y. Sup. Ct. July 27, 2017)(holding that the defense of lack of standing may be waived when borrower executes a loan modification agreement with foreclosing plaintiff). This Court also observed that, to the extent necessary, the parties' competing interests and defenses could be litigated by way of a separate lawsuit. See U.S. Bank, N.A. v. Brumfiel (In re Brumfiel), 514 B.R. 637, 645-46 (Bankr. D. Colo. 2014)(hearing on motion for relief from stay is a summary proceeding where no final determinations are made, and where creditor makes a colorable claim the court may allow relief from stay so that creditor may litigate its substantive

claim in state court).

As such, the Court set forth its rationale in granting U.S. Bank relief from stay at the June 2, 2017 hearing as follows:

> [T]he automatic stay in bankruptcy isn't designed to be there permanently. This is a Chapter 7 case and Chapter 7s are usually over within a matter of months, not years. And so even absent a motion for relief from stay, the stay is lifted in a very short period of time statutorily, again, assuming everybody cooperates and unnecessary litigation doesn't consume the docket. And what we have here is an instance where there is a lender [that] hasn't been paid in now three years.
>
> Cases say that . . . the automatic stay can be lifted for cause and the contours of cause is left to the discretion of the Court. And here we have a situation where the lender hasn't been paid and understandably now you're contending, Mr. Scott, even though you signed some documents reaffirming the underlying loan documents and even though that . . . back when the loan modification agreement was signed by you and some payments were tendered and were accepted, that nonetheless you now contend that the creditor here shouldn't be bringing their motion for relief from stay because for some reason you contend that the lender . . . isn't due anything because there is no note.
>
> Some of those positions are inconsistent. Fact of the matter is, [and] that might be the rub of the entire case. Seems to me that if parties are going to actually litigate the bona fides of the debt, the bona fides of the obligation to pay, then it should be done in a proceeding where you can have final determinations of those matters. And in light of the fact that the automatic stay is really a temporary injunction in bankruptcy and you've had the benefit of that temporary injunction . . . for five months at a minimum.
>
> I think in light of the fact that there hasn't been any payments for years that that in and of itself is cause for granting relief from stay. If there is equity in

> this property and if there's debt due, the equity is very small. I hear what you say in terms of other creditors who may have an interest because they may have liens, but the foreclosure action is an in rem action by the creditor and anyone having an in rem interest in the property is to receive due and appropriate notice and if they have the ability to protect their interest in the State Court there [in Massachusetts], then they could appear and seek to protect their interests. And, of course, you'll have the opportunity to protect your interests in claims there because you'll have an opportunity to respond. And so for all those reasons, I'm going to grant the motion for relief from stay.

See Transcript of June 2, 2017 Hr'g ("June 2nd Tr."), 17-70045-JAD, ECF No. 263, at pgs. 16-17.

For sake of completeness, the Court notes that it was under the mistaken impression at the June 2, 2017 hearing that Mr. Scott's defenses to U.S. Bank's foreclosure could be asserted by way of answer or counterclaim to a judicial foreclosure in Massachusetts. This mistaken impression was caused by the fact that local counsel in this case incorrectly asserted in both U.S. Bank's motion and at the hearing that a judicial foreclosure action was pending in Massachusetts. See June 2nd Tr. at pgs. 5 and 12-13. The Court would also note that local counsel was a Pennsylvania lawyer not informed as to the foreclosure process in Massachusetts.

After entry of the June 2, 2017 order, local counsel for U.S. Bank was replaced by its current counsel and the Court subsequently learned from the parties that Massachusetts is a "power of sale" state and not a jurisdiction where judicial foreclosures are filed against delinquent borrowers. See Goldsmith v. LBM Fin., LLC (In re Loucheschi, LLC), 496 B.R. 41, 46 (Bankr.

8

D. Mass. 2013) (describing the ways to foreclose a mortgage under Massachusetts law).

The Court's misunderstanding, however, is of no moment. Cf. Glass v. Phila. Elec. Co., 34 F.3d 188, 191 (3d Cir. 1991) (discussing the "harmless error" doctrine); see also Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 53 & 59 (3d Cir. 1989)(same) and Fed. R. Bankr. P. 9005 (adopting Fed. R. Civ. P. 61, which provides that at "every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights").

The Court reaches this conclusion because, after the entry of the relief from stay order, Mr. Scott appealed and U.S. Bank voluntarily agreed to stay its foreclosure pending the outcome of this Adversary Proceeding.[4]  Likewise, the District Court stayed the appeal pending the outcome of this litigation.

The Court would also note that the instant litigation was commenced by way of an adversary complaint filed by Mr. Scott on May 18, 2017 (the Complaint, 17-07028-JAD, ECF No. 1), but the Court was not advised of its commencement at the June 2, 2017 hearing on the Motion for Relief From Stay.

While this Adversary Proceeding was pending, Mr. Scott also filed on November 28, 2017 a document labeled *Motion to Strike and/or Preclude 28*

---

[4]   The appeal of the order granting relief from stay appears to be moot for several reasons, including the fact that the Stable Property has been abandoned and is no longer property of the estate and because Mr. Scott received his chapter 7 discharge on August 26, 2019 (17-70045-JAD, ECF No. 614). See 11 U.S.C. §§ 362(c)(1) and 362(c)(2).

*U.S.C. § 157(b)(2)(B)* (the "<u>Motion to Strike</u>").  In the Motion to Strike, Mr. Scott made general allegations that the lien interest of U.S. Bank should be avoided due to defects associated with the assignment of the Note to U.S. Bank.  In an abundance of caution and given the avoidance relief asserted in the Motion to Strike, the Clerk of the Bankruptcy Court docketed the Motion to Strike as a separate adversary proceeding pursuant to Fed. R. Bankr. P. 7001 at Adversary Proceeding No. 17-07050-JAD.  <u>See</u> 17-07050-JAD, ECF No. 1.

Shortly following the commencement of Adversary Proceeding No. 17-07050-JAD, U.S. Bank filed a motion to dismiss in that case asserting that Mr. Scott failed to state a claim under Fed. R. Civ. P. 12(b)(6). <u>See</u> *U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7's Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)* (the "<u>Motion to Dismiss</u>"), 17-07050-JAD, ECF No. 8.

While the Motion to Dismiss was pending, U.S. Bank also filed a motion to consolidate the adversary proceedings found at both 17-07028-JAD and 17-07050-JAD. <u>See</u> *Motion of U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7 to Consolidate* (the "<u>Motion to Consolidate</u>"). <u>See</u> 17-07028-JAD, ECF No. 102. In the filings related to the Motion to Consolidate, both U.S. Bank and the Debtor raised jurisdictional questions with each party taking various and somewhat (if not outright) self-contradictory positions.

10

By the Motion to Consolidate, U.S. Bank also sought to consolidate an adversary proceeding filed by U.S. Bank at Adversary Proceeding No. 18-07005-JAD against Mrs. James-Scott on January 29, 2018. The action against Mrs. James-Scott sounded in mortgage enforcement against her interests in the Stable Property.

The Debtor filed a response in opposition to the Motion to Consolidate in which the Debtor stated that it was "not apparent that the Bankruptcy Court has jurisdiction over Mrs. Scott." *Opposition by the Debtor to Consolidate Cases* ("Opposition"), 17-07028-JAD, ECF No. 107 at ¶ 1. In support of this position, the Debtor observed that the Stable Property had been exempted from the bankruptcy estate. See Opposition at ¶ 2. Thus, Mr. Scott contended that "whether or not the Judge grants the Debtor relief in this matter will not affect the administration of the bankruptcy estate." See Opposition at ¶ 2.

U.S. Bank filed a reply wherein it took the position that if the Debtor was correct that the Stable Property was no longer property of the estate, then this Court lacked subject-matter jurisdiction over all three adversary proceedings and dismissal was warranted. See *Reply in Further Support of U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7's Motion to Consolidate* (the "Reply"), 17-07028-JAD, ECF No. 110, at ¶ 2. U.S. Bank thus requested that the Court consolidate all three of the adversary proceedings or, in the alternative, dismiss the adversary proceedings. See Reply at pgs. 6-7.

At a minimum, it appeared to the Court that the parties agreed that if the Stable Property was no longer property of the estate, then this Court lacked subject-matter jurisdiction to hear the adversary proceedings. However, the Debtor then filed a pleading styled as "*Debtor's Objection to Trustee's Claim that the Court Should Dismiss the Pending Adversary Proceedings Against the Trustee for Lack of Jurisdiction*" (the "Objection to Dismissal," 17-07028-JAD, ECF No. 118), wherein the Debtor asserted that the lawsuit filed by him at Adversary Proceeding No. 17-07028-JAD should not be dismissed because the lawsuit is a "core" proceeding within the meaning employed by 28 U.S.C. § 157(b).  He also averred that U.S. Bank's lawsuit against Mrs. James-Scott at Adversary Proceeding No. 18-07005-JAD should be dismissed for lack of jurisdiction since she is not a debtor in this bankruptcy case.

At hearings held April 19, 2018, the Court pointed out both parties' inconsistencies with respect to assertions of subject-matter jurisdiction. U.S. Bank stated that the issues regarding avoidance of the Mortgage and Note sound in state-law and were non-core proceedings. U.S. Bank clarified and stated that its position is that if the Court were to find no jurisdiction, all matters should be dismissed. U.S. Bank also stated that it did not oppose sending all matters to Massachusetts for resolution. The Debtor, on the other hand, opposed litigating the issues in Massachusetts arguing that the stay should be imposed against the Stable Property since it constitutes property of the Debtor (even after abandonment by the bankruptcy trustee). The Debtor

therefore argued that the matters pending in the instant Adversary Proceeding 17-07028-JAD are properly before the Bankruptcy Court.

Suffice it to say, U.S. Bank asserts in some of its papers that this Court has "related to" subject-matter jurisdiction over some components of these proceedings but consents to dismissal. The Debtor argues that the Court's jurisdiction over the adversary proceedings is "core" and should not be dismissed.

Procedurally, a hearing was held on June 28, 2018 regarding the Motion to Dismiss and the Motion to Consolidate. As a result of the hearings, the Motion to Dismiss was converted into one seeking summary judgment and the Court consolidated the Motion to Strike proceeding (Adversary Proceeding No. 17-07050-JAD) with the instant Adversary Proceeding (17-07028-JAD).[5] The Court also deferred ruling on the consolidation request with respect to the adversary proceeding by U.S. Bank against Mrs. James-Scott at Adversary Proceeding No. 18-07005-JAD until such time that the jurisdictional issue was decided. Thereafter, over the ensuing year, the parties filed various supplemental documents with the Court, which have been duly considered.

As set forth below, the Court finds subject-matter jurisdiction to be lacking. The Court will therefore not only dismiss this consolidated Adversary Proceeding, it will also enter an order that dismisses Adversary Proceeding No. 18-07005-JAD.

---

[5] Accordingly, whenever the Court references the term "<u>Adversary Proceeding</u>" it also includes the matters raised by the Motion to Strike.

13

## II.
## The Court Lacks
## <u>Subject-Matter Jurisdiction Over This Proceeding</u>

"Federal courts are presumed not to have jurisdiction without affirmative evidence of this fact." <u>See</u> <u>Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.</u>, 692 F.3d 283, 293 (3d Cir. 2012). The party asserting that a court has jurisdiction bears the burden of proving that such jurisdiction exists. <u>See</u> <u>Nuveen</u>, at 293.

Like so many other issues in this case, the question of who is asserting that subject-matter jurisdiction exists has been complicated by the shifting and/or inconsistent positions of the parties. Despite previously raising questions regarding this Court's subject-matter jurisdiction, and following conversion of the Motion to Dismiss into one seeking summary judgment, U.S. Bank filed a brief in support of summary judgment wherein it asserted that this Court has "related-to" subject-matter jurisdiction over all claims, including those against Mrs. James-Scott. <u>See</u> *Supplemental Brief of U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7 in Support of its Request for Summary Judgment* ("<u>U.S. Bank's Supplemental Brief</u>"), 17-07028-JAD, ECF No. 137. In its brief, U.S. Bank further noted, without explicitly asking for such relief, that the Court may abstain from deciding all of the adversary proceedings—going so far as to point out which factors weigh in favor of abstention. <u>See</u> U.S. Bank's Supplemental Brief at pgs. 6-7, n. 2.

14

For his part, Mr. Scott avers that the Court has "core" jurisdiction over the consolidated Adversary Proceedings (but not 18-07005-JAD). Thus, as it stands, it appears that the parties agree that this Court has jurisdiction to hear adversary proceedings 17-07028-JAD and 17-07050-JAD.

Regardless of any agreement by the parties, this Court has an independent obligation to determine whether it has the requisite subject-matter jurisdiction to hear and decide a case or controversy. Arbaugh v. Y& H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 1244, 163 L.Ed.2d 1097 (2006); see also Enterprise Bank v. Eltech, Inc. (In re Eltech, Inc.), 313 B.R. 659, 662-663 (Bankr. W.D.Pa. 2004).

Germane to the issue of jurisdiction is the fact that ***from the outset of this case*** Mr. Scott has claimed an exemption in the Stable Property.[6] See e.g., Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)(discussing the exemption process and effect of lawfully exempting property from trustee liquidation efforts).

Not only has Mr. Scott exempted the Stable Property from being an asset of the bankruptcy estate, it is undisputed that Mr. Scott owns the Stable Property with his wife as tenants by the entireties—thereby presenting an obstacle for the Chapter 7 trustee to liquidate it. See e.g., Bellinger v. Buckley,

---

[6] Jurisdiction is assessed at the time of filing of the Adversary Proceeding. See e.g., Grupo Dataflex v. Atlas Global Grp., L.P., 541 U.S. 567, 570-71 (2004)("It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought[.]' ") Mr. Scott's bankruptcy case was commenced on January 25, 2017, and he filed his claim of exemptions in the Stable Property on February 8, 2017, which was well prior to the commencement of this Adversary Proceeding on May 18, 2017.

577 B.R. 193 (D. Md. 2017)(describing the debtor's interest in property held by tenancy-by-the-entireties and how the asset is shielded from liquidation by a trustee in bankruptcy); <u>see</u> <u>also</u> <u>In re Martin</u>, 269 B.R. 119 (Bankr. M.D. Pa. 2001).

As a result of these facts, the Chapter 7 Trustee (James R. Walsh, Esquire) both withdrew his objection to Mr. Scott's claim of exemptions and abandoned any interest that the bankruptcy estate could claim with respect to the Stable Property. <u>See</u> <u>In re Guterl Special Steel Corp.</u>, 316 B.R. 843, 861 (Bankr. W.D. Pa. 2004)(abandoned property ceases to be property of the estate and "[i]t reverts *nunc pro tunc* to the debtor or whoever had the possessory right to the property when the bankruptcy petition was filed, and stands as though no bankruptcy petition was ever filed.")(citing <u>Dewsnup v. Timm (In re Dewsnup)</u>, 908 F.2d 588, 590 (10th Cir. 1990), <u>aff'd</u> 502 U.S. 410 (1991)); <u>see</u> <u>also</u> 11 U.S.C. § 363(h)(3)(providing that sale of co-owned property may only occur if, among other things "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners") <u>and</u> Benjamin C. Ackerly, <u>Tenants by the Entirety and the Bankruptcy Reform Act</u>, 21 Wm & Mary Law Rev. 701, 714-15 (1980).

In addition, the Chapter 7 Trustee has filed his report of no distribution in this case, thereby acknowledging that no property of the estate will be available for liquidation and distribution to creditors. <u>Dircks v. Global Fin. Credit, LLC (In re Dircks)</u>, 329 B.R. 687, 692 (Bankr. C.D. Ill. 2005)(given trustee's report of no distribution and abandonment, the alleged asset will have

16

no effect on the bankruptcy estate).

The net result of these facts is that unsecured creditors will receive zero recovery in this bankruptcy case and putative secured creditors, like U.S. Bank, are left to their own devices to recover *in rem* interests outside of the bankruptcy process from non-bankruptcy estate property. See Dewsnup, 502 U.S. at 418 (noting that a bankruptcy discharge extinguishes only *in personam* claims and not *in rem* claims against property)(citing Johnson v. Home State Bank, 501 U.S. 78, 84 (1991)).

The essential question presented by these facts is whether the Court may nonetheless exercise jurisdiction and decide the nature and extent of U.S. Bank's ability to enforce the Note and Mortgage against non-bankruptcy estate property?   This Court concludes that the Court's subject-matter jurisdiction does not extend to such matters where the bankruptcy estate's interests are not implicated.

The Court reaches this conclusion because subject-matter jurisdiction of the bankruptcy court is limited and is derivative of the limited subject-matter jurisdiction bestowed upon the United States District Court.

Section 1334 of title 28 states, in pertinent part, that "district courts shall have original and exclusive jurisdiction of all cases under title 11 . . . [and] original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." See 28 U.S.C. §§ 1334(a) and (b).

Section 157(a) of title 28 further states that a district court may provide

17

that any such case or proceeding may "be referred to the bankruptcy judges for the district" and the bankruptcy court "may hear and determine [such] cases [and such proceedings] . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." See id. at §§ 157(a) and (b)(1).

The United States District Court for the Western District of Pennsylvania has provided for the referral of the instant bankruptcy case and Adversary Proceeding to this Court by operation of the standing *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, which provides that "any or all proceedings arising under [t]itle 11 or arising in or related to a case under [t]itle 11 . . . be and they hereby are referred to the Bankruptcy Judges of this district for consideration and resolution." See Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, adopted Oct. 16, 1984.[7]

The statutory regime set forth above unequivocally provides that this Court only has subject-matter jurisdiction to hear and decide the Adversary Proceeding if the lawsuit constitutes any of the following: (1) a "case under" title 11, (2) a civil proceeding "arising under" title 11, (3) a civil proceeding "arising in" a case under title 11, or (4) a civil proceeding that is "related to" a case under title 11.

The first three types of subject-matter jurisdiction set forth above have their genesis in title 11 (i.e., the Bankruptcy Code).  Specifically, a "case under" title 11 refers to the bankruptcy petition itself. In re Combustion Eng'g, Inc.,

---

[7]    Available    at    <http://www.pawd.uscourts.gov/sites/pawd/files/general-orders/bankruptcy_standing_order.pdf>.

391 F.3d 190, 225 n. 38 (3d Cir. 2005).  A proceeding "arises under" title 11 when the Bankruptcy Code creates the cause of action or when the Bankruptcy Code provides the substantive right that is being invoked. Stoe v. Flaherty, 436 F.3d 209, 217 (3d Cir. 2006); see also Halper v. Halper, 164 F.3d 830, 836-37 (3d Cir. 1999).  Likewise, a proceeding "arises under" title 11 or "arises in a case under title 11" if the proceeding would have "no existence outside of bankruptcy." United States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999).

Because Mr. Scott's lawsuit is simply a state law cause of action challenging U.S. Bank's standing to enforce a debt against the Stable Property, it is beyond dispute that the instant Adversary Proceeding does not fall within the ambit of these three sources of bankruptcy subject-matter jurisdiction. Indeed, the undisputed record is that the matters complained of by Mr. Scott in the Adversary Proceeding could have been brought in a non-bankruptcy forum well prior to the filing of his bankruptcy case and, as such, the causes of action have their own stand-alone existence outside of bankruptcy. Under these circumstances, the Adversary Proceeding is not a "case under" title 11.  It also is not a proceeding "arising in" or "arising under" title 11.  Nor is it a proceeding "arising in" or "under" a title 11 case.  As such, this Court lacks subject-matter jurisdiction to hear and decide this Adversary Proceeding unless it is a matter that is "related to" a case under title 11.

The United States Supreme Court has instructed that the "related to" jurisdiction of the bankruptcy courts "cannot be limitless" and thus,

"bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." Smalis v. City of Pittsburgh Sch. Dist. (In re Smalis), 556 B.R. 703, 710 (W.D. Pa. 2016), aff'd, 684 F. App'x 109 (3d Cir. 2017)(quoting Celotex Corp. v. Edwards, 514 U.S. 300, 308 & n. 16 (1995) and Nuveen, 692 F.3d at 294).

The applicable test for "related to" jurisdiction is found in the Third Circuit's opinion in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1985). The test articulated in Pacor is whether the outcome of a proceeding "could conceivably have any effect on the estate being administered in bankruptcy." Id. As the Third Circuit in Pacor held, this test is satisfied so long as a proceeding may impact "the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) ***and which in any way impacts upon the handling and administration of the bankruptcy estate***." Id. (underline and emphasis added); accord Nuveen, 692 F.3d at 293-94.  It is this latter component of the Pacor test which recognizes the prudential limitation of bankruptcy jurisdiction. That is, the outer limit of this Court's jurisdiction extends only to those matters which could conceivably affect the estate being administered in bankruptcy.  Where the proceeding has no conceivable effect on the bankruptcy estate, this Court's jurisdiction is absent.

In canvassing the record, this Court concludes that the outcome of the Adversary Proceeding will have no impact, either positively or negatively, upon the administration of this bankruptcy estate.  While the outcome of the lawsuit could conceivably inure to the benefit (or detriment) of Mr. Scott or his wife

personally, the fact remains that the outcome of this matter will not enlarge the bankruptcy estate because the Debtor has exempted the Stable Property from the bankruptcy estate and the Chapter 7 Trustee has abandoned any remaining interest in the Stable Property.   Nor will the outcome of the Adversary Proceeding reduce the estate, as the Chapter 7 Trustee has filed his report of no distribution and has abandoned the Stable Property.   Thus, because there is nothing to enlarge or reduce the bankruptcy estate, and the Adversary Proceeding will have no conceivable effect on its handling and administration, this Court lacks "related to" subject-matter jurisdiction to hear and decide the controversy.

The Court also notes that its conclusion regarding lack of subject-matter jurisdiction is consistent with the decisions of other courts which have declined to exercise jurisdiction to hear challenges to *in rem* claims when the underlying collateral had been abandoned from the bankruptcy estate. See, e.g., Lyn v. Transamerica Small Bus. Capital, Inc. (In re Lyn), 483 B.R. 440, 451 (Bankr. D. Del. 2012); Travers v. Bank of Am., N.A. (In re Travers), 507 B.R. 62, 70-71 (Bankr. D.R.I. 2014); Maxwell v. HSBC Mortg. Corp. (In re Maxwell), Adv. No. 12-5284, 2012 WL 3678609, at *2-3 (Bankr. N.D. Ga. Aug. 22, 2012); and Ostroff v. Am. Home Mortg. (In re Ostroff), 433 B.R. 442 (Bankr. D.D.C. 2010). These decisions are well reasoned, and this Court adopts them herein.   The Court therefore determines that the instant Adversary Proceeding must be dismissed for want of subject-matter jurisdiction.

For the sake of further clarity, in the Debtor's Objection to Dismissal, the Debtor argues that the Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(K)—in that it is a proceeding to determine the validity, extent or priority of a lien.   The Debtor also argues that the action is a "core" proceeding under 28 U.S.C. § 157(b)(2)(B) because the Debtor is objecting to U.S. Bank's claim.[8]   Relying upon the distinction between "core" versus "non-core" matters pursuant to 28 U.S.C. § 157, the Debtor appears to argue that this Court has jurisdiction.

The Court, however, does not find the Debtor's argument to be persuasive because 28 U.S.C. § 157 does not define federal court jurisdiction for bankruptcy matters.   Rather, 28 U.S.C. § 157 sets forth the framework in which matters may be referred by the United States District Court to the judges of the United States Bankruptcy Court for determination.   Thus, the contours of original subject-matter jurisdiction regarding bankruptcy matters rests in 28 U.S.C. § 1334 and reliance on 28 U.S.C. § 157 is misplaced.

In other words, the fact remains that "related to" jurisdiction under 28 U.S.C. § 1334(b) is the broadest category of bankruptcy court subject-matter jurisdiction with the least stringent threshold—requiring only that an action have a "conceivable" effect on a bankruptcy estate in order to fall within this

---

[8]   No "claims" have been filed in this case pursuant to 11 U.S.C. § 501 and related statutes and rules because the estate has no assets for distribution to unsecured creditors.  As such, unsecured creditors have had their claims discharged and the *in rem* lien interests of secured creditors, like U.S. Bank, pass through bankruptcy unaffected pursuant to the U.S. Supreme Court's holding in Dewsnup, supra.

Court's jurisdiction. If an action does not fall within the boundaries of jurisdiction set forth in 28 U.S.C. § 1334, the "core" versus "non-core" provisions of 28 U.S.C. § 157 are of no moment.  Conversely, if an action does fall within the contours of 28 U.S.C. § 1334, then 28 U.S.C. § 157 does apply. Of the actions that a bankruptcy court may have jurisdiction to hear under 28 U.S.C. § 1334, the classification of them as "core" versus "non-core" under 28 U.S.C. § 157 merely distinguishes between those actions or proceedings in which the bankruptcy court may enter final judgment subject to ordinary appellate review and those proceedings which the bankruptcy court, absent the consent of the litigants, may enter a non-final determination (i.e., a report and recommendation) for *de novo* review by the district court. See Wellness Int'l Network, LTD v. Sharif, _ U.S. _, 135 S.Ct. 1932, 191 L.Ed.21 911 (2015).  This statutory framework therefore mandates the conclusion that 28 U.S.C. § 157 does not serve as a vehicle to enlarge federal court jurisdiction over bankruptcy matters under 28 U.S.C. § 1334.

As discussed above, the consolidated adversary proceedings *sub judice* fail to meet the "related to" requirement of conceivably affecting the bankruptcy estate. Accordingly, even if the actions on their face appear to fall within the categories of "core" matters enunciated in 28 U.S.C. § 157(b), this Court would still nonetheless lack subject-matter jurisdiction.

### III.
### Even If This Court Had the Power to Decide This Adversary Proceeding, the Debtor's Challenges to U.S. Bank's Standing to Enforce the Note and Mortgage Lack Merit

Section 1334(e)(1) of title 28 of the United States Code affords this Court

with jurisdiction over "all the property, wherever located, of the debtor . . . and of property is the estate." There is uncertainty as to whether this provision affords the Court with jurisdiction to hear and decide the Adversary Proceeding.

Weighing against the Court's exercise of jurisdiction *sub judice* is the fact that the heart of the dispute in this case is not the extent of the Debtor's ownership of property. In fact, it is undisputed that the Debtor and his spouse own the residence at issue as tenants-by-the-entireties. Rather, the heart of the dispute is U.S. Bank's standing to enforce an underlying debt supporting U.S. Bank's mortgage interest against non-bankruptcy estate property. In this context, countenancing against the exercise of jurisdiction is the narrow interpretation afforded by some courts with respect to 28 U.S.C. § 1334(e)(1), which have held that bankruptcy courts should not exercise jurisdiction over civil proceedings where the outcome does not affect the bankruptcy estate. See, e.g., Jacobs v. Jacobs (In re Jacobs), 401 B.R. 202, 206 (Bankr. D. Md. 2008); contra United States Dep't of Agric., Rural Hous. Serv. (In re Huff), 343 B.R. 136, 140 (W.D. Pa. 2006).

Nonetheless, the Court recognizes that when this Adversary Proceeding was commenced, U.S. Bank had its Motion for Relief From Stay pending pursuant to 11 U.S.C. § 362(d). Obviously, a prerequisite to a creditor prosecuting such a motion is the creditor having standing to do so. Arguably, the pendency of the Motion for Relief From Stay triggered the outer limits of the

"arising under" or "arising in" subject-matter jurisdiction of this Court.[9]  But, the strength of such argument dissipates due to the fact that abandonment of the subject property is retroactive in that property abandoned "revests *nunc pro tunc* to the debtor or whoever had the possessory right to the property when the bankruptcy petition was filed, and stands as though no bankruptcy petition was ever filed." In re Guterl Special Steel Corp., 316 B.R. at 861.

For the sake of completeness given the jurisdictional complexity of the questions presented, and in the event this Court has subject-matter jurisdiction to hear and decide this Adversary Proceeding, the material facts not in dispute reflect that U.S. Bank does have standing to enforce the Note and Mortgage against the Stable Property.  As such, on the merits Mr. Scott is not entitled to the relief he seeks.

The standard for summary judgment has long been established.  Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).  Courts have elaborated on this standard as follows:

---

[9]  The uncertainty of the answer to this jurisdictional question further supports the Court's exercise of discretion in granting of the Motion for Relief From Stay to permit the parties to litigate their issues in a non-bankruptcy forum which indisputably would have subject-matter jurisdiction to hear and decide this controversy.

"Summary judgment is appropriate only where ... there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." <u>Melrose, Inc. v. Pittsburgh</u>, 613 F.3d 380, 387 (3d Cir. 2010) (quoting <u>Ruehl v. Viacom, Inc.</u>, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>McGreevy v. Stroup</u>, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. <u>Anderson</u>, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.' " <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 278 (3d Cir. 2000) (quoting <u>Armbruster v. Unisys Corp.</u>, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." <u>Coolspring Stone Supply v. Am. States Life Ins. Co.</u>, 10 F.3d 144, 148 (3d Cir. 1993); <u>see also</u> <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

<u>Hadeed v. Advanced Vascular Res. of Johnstown, LLC</u>, No. 3:15-CV-22, 2017

WL 4998663, at *4 (W.D. Pa. Oct. 30, 2017).

The record in this case consists of 852 docket entries,[10] hundreds of pages of exhibits, and at least ten briefs and/or supplemental briefs. While the Court will not unnecessarily meander through every filing and supplemental filing made by the parties in this case, the record reflects that the filing of briefs and supporting evidence was completed by the parties on September 24, 2019.

The evidence of record which has been produced by the parties reflects that the Debtor and Mrs. James-Scott executed the Note in favor of GreenPoint Mortgage Funding, Inc. ("GreenPoint") on April 26, 2004. See Note at ¶ 1. To secure the Note, the Debtor and Mrs. James-Scott also executed the Mortgage against the Stable Property. Thereafter, the Note was lost and an *Affidavit of Lost Note* was executed by GreenPoint on June 2, 2004 (the "Lost Note Affidavit").[11] See Exhibit "B" to the *Declaration of John W. Wildrick* (the "Wildrick Declaration"), 17-07028-JAD, ECF No. 134.

Despite the physical loss of the Note, U.S. Bank alleges that GreenPoint transferred its ownership interest in the Note to DLJ Mortgage Capital, Inc. ("DLJ") on or about June 29, 2004. See *Supplemental Brief of U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7 in*

---

[10] As of September 24, 2019, the dockets of bankruptcy case nos. 17-70045-JAD, 17-07028-JAD, 17-07050-JAD consisted of 618, 195, and 39 docket entries respectively. An additional 62 entries (not included in the total cited) were docketed at 18-07005-JAD.

[11] The Lost Note Affidavit incorrectly states that the Note was in the original amount of $25,000. The Wildrick Declaration identifies this sum as a scrivener's error. See Wildrick Declaration at ¶ 15.

*Response to the Hearing on November 30, 2018*, 17-07028-JAD, ECF No. 167-1, Ex. A. DLJ allegedly then sold the Note to Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse"), who in turn allegedly deposited the Note into a Trust[12] via a *Pooling and Servicing Agreement* dated July 1, 2004. See *U.S. Bank, National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7's Brief in Response to the Court's Order Requiring Briefing and Continuing Briefing*. 17-70045-JAD, ECF No. 360-4, Ex. C to 1. GreenPoint is currently a named servicer of the Trust and U.S. Bank National Association is the Trustee. See id.

With respect to the Mortgage, MERS[13] (in its capacity as nominee for the Lender, GreenPoint) assigned the Mortgage to U.S. Bank National Association as Trustee for the Certificateholders of Mortgage-Backed Pass-Through Certificates, Series 2004-AR7 on December 14, 2009. See *Assignment of Mortgage*, 17-70045-JAD, ECF No. 106, Ex. B, pg. 22. That entity assigned the Mortgage to U.S. Bank, National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage-Backed Pass Through Certificates, Series 2004-AR7 (i.e., "U.S. Bank" as defined herein) on July 23, 2015. See

---

[12] As used in this Memorandum Opinion, the defined term "Trust" or "Note Trust" shall mean the trust created by the Pooling and Servicing Agreement dated July 1, 2004 relating to Mortgage-Backed Pass-Through Certificates Series 2004-AR7.

[13] As used in this Memorandum Opinion, the defined term "MERS" shall mean the Mortgage Electronic Registration Systems, Inc. MERS is the nominee for the Lender, Greenpoint, under the Mortgage dated April 26, 2004 by and between Mr. & Mrs. Scott and Greenpoint. See Exhibit "B" to the Amended Answer filed by U.S. Bank at Adversary No. 17-07028-JAD, ECF No. 101.

*Corporate Assignment of Mortgage*, 17-70045-JAD, ECF No. 106, Ex. B, pgs. 20-21. The Debtor challenges the validity of these assignments, which is discussed below.[14]

### A.
### Massachusetts Mortgage Foreclosure Law Generally

The law of mortgages in the Commonwealth of Massachusetts has been described as being a "mixed system" derived "partly from the common law in regard to real property, partly from the rules and maxims of the English Courts of Chancery, but principally from various statutes." See Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1126-1127 (Mass. 2012) (quoting in parenthetical Fay v. Cheney, 14 Pick. 399, 400-401 (Mass. 1833)).

Under the common law of Massachusetts, a mortgage is comprised of two distinct but related aspects: (1) "a transfer of legal title to the mortgage[d] property," and (2) "it serves as a security for an underlying note or other obligation[.]" Eaton, at 1124.

Separation of the mortgage from the mortgage note is permissible under Massachusetts law and unlike some other jurisdictions, the transfer of one does not carry with it the other. See id. However, when a mortgage is separated from the debt it secures, the mortgage represents a "mere technical interest." Id. In this latter scenario, the holder of a mortgage alone is without power to

---

[14] The parties also submitted extensive evidence regarding the transfer of servicing rights of the loan evidenced by the Note and Mortgage (the "Loan"). As no discussion of the servicing rights is required to resolve this matter *sub judice*, the Court declines to set forth a recitation of that evidence at this time.

foreclose in its own right and holds the mortgage in trust for the holder of the note, "who has an equitable right to obtain an assignment of the mortgage." Id. at 1125.

In addition to common law enforcement of a mortgage, "[i]t has long been recognized that statutes are a key source of authority generally governing mortgages" and are specifically significant with respect to the exercise of the statutory power of sale. See id. at 1126.

The "statutory power of sale," authorized by Massachusetts General Laws chapter 183 § 21, empowers a mortgagee to foreclose upon default of a mortgage without first obtaining judicial approval. See Eaton, at 1127. However, to effectuate a statutory power of sale, the mortgagee must be in strict compliance with the terms of the mortgage and applicable statutes. See Eaton, at 1126-1128.

In Massachusetts the applicable statute states, in pertinent part, as follows:

> The **mortgagee** or person having estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal or the legal guardian or conservator of such mortgagee **or person acting in the name of such mortgagee** or person, may, upon breach of condition and without action, perform all acts authorized or required by the power of sale; provided, however, that no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale [the notice requirements of this section are fulfilled.]

Mass. Gen. Laws ch. 244, § 14 (emphasis and italics added).

The record reflects that the Mortgage in the instant case provides the "Lender" (which is GreenPoint) the ability to invoke the statutory power of sale

upon an uncured default by the "Borrowers" (which are the Debtor and Mrs. James-Scott). See Mortgage at ¶ 22.[15] As the Debtor challenges U.S. Bank's standing to foreclose on the Note and Mortgage, the operative question in this case is whether U.S. Bank has the authority to effectuate the statutory power of sale in light of the transactional history of this case.  The answer to this question is "yes" in that U.S. Bank does have the requisite authority to foreclose.

The Supreme Judicial Court of Massachusetts addressed the issue of standing to foreclose in Eaton v. Federal National Mortgage Association.  In that case, the holder of a mortgage—but not the mortgage note—sought to foreclose on the plaintiff's real property under the statutory power of sale.  The Eaton court construed the term "mortgagee" under the statute to be the person or entity who is the holder of both the mortgage and the mortgage note. See Eaton, at 1129. However, further recognizing that "[t]here is no applicable statutory language suggesting that the Legislature intended to proscribe application of general agency principles in the context of mortgage foreclosure sale[,]" the Eaton court also declined to confine "mortgagee" to the actual possessor of the mortgage note.  Instead, the Eaton court extended the definition of the term "mortgagee" to include a "person or entity then holding

---

[15] The Mortgage provides that after notice of default to the Borrowers, "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." See Mortgage at ¶ 22.

the mortgage and also either holding the mortgage note or ***acting on behalf of the note holder***." <u>See</u> <u>Eaton</u>, at 1121 (emphasis and italics added).

Accordingly, to succeed in its request for summary judgment, U.S. Bank must show that there is no genuine issue of material fact that (a) it is the holder of the Mortgage and (b) it is either the holder of the Note, or is acting on the noteholder's behalf.

**B.**
**<u>U.S. Bank is the Holder of the Mortgage</u>**

The question of who is the current holder of the Mortgage is relatively straightforward.

The undisputed record reflects that the Mortgage was executed by the Debtor and Mrs. James-Scott, and the Mortgage identifies GreenPoint as the "Lender." The Mortgage also names MERS as the nominee of the Lender and "Lender's successors and assigns." <u>See</u> Mortgage, at ¶¶ (C), (D), & pg. 3.   In this capacity, the Mortgage further grants to both MERS and MERS' successors and assigns, the power of sale with respect to the Stable Property. <u>Id</u>. The Lender is also empowered with the statutory power of sale in paragraph 22 of the Mortgage.

In support of its position that it is entitled to enforce the Mortgage, U.S. Bank provided to this Court two subsequent assignments of the Mortgage by which U.S. Bank acquired title to the Mortgage.

First, by *Assignment of Mortgage* dated December 14, 2009, MERS assigned the Mortgage to U.S. Bank National Association as Trustee for the Certificateholders of Mortgage-Backed Pass-Through Certificates, Series 2004-

AR7 c/o BAC Home Loans Servicing, LP.  Subsequently, that entity[16] assigned the Mortgage by *Corporate Assignment of Mortgage* dated July 23, 2015 to U.S. Bank, as defined herein. See 17-70045-JAD, ECF No. 106-3, Ex. B at pgs. 20-22.

The Debtor challenges the validity of these assignments.  In his adversary complaint, the Debtor under Claim V alleges that all assignments are void and makes reference to the assignment by MERS. The Debtor's argument appears to be that MERS, as nominee for the Lender, held bare legal title and lacked the capacity to transfer the Mortgage.  The Debtor therefore posits that the noteholder (GreenPoint) is the only party permitted to assign the Mortgage because GreenPoint is the entity that owned the beneficial interest. See Complaint at pgs. 5-6.

This position was expressly refuted by the Appeals Court of Massachusetts in Shea v. Federal National Mortgage Association, 31 N.E.3d 1122 (Mass. App. Ct.  2015). In Shea, the plaintiff-mortgagor challenged the validity of a mortgage foreclosure against its real property on the basis that the mortgage assignment from MERS to the foreclosing mortgagee was invalid. The

---

[16] By the December 14, 2009 mortgage assignment, the Mortgage was assigned to U.S. Bank National Association as Trustee for the Certificateholders of Mortgage-Backed Pass-Through Certificates, Series 2004-AR7 c/o BAC Home Loans Servicing. In the July 23, 2015 assignment, the assignor is identified as being U.S. Bank National Association as Trustee for the Certificateholders of Mortgage-Backed Pass-Through Certificates, Series 2004-AR7 but with c/o Ocwen Loan Servicing, LLC.  The Court notes that pursuant to the Wildrick Declaration, the servicing of the Loan was transferred to Ocwen Loan Servicing, LLC on March 1, 2014. See Wildrick Declaration at ¶ 11.

plaintiff's position was two-fold: (1) that MERS lacked authority to assign the mortgage because it was never the noteholder, and (2) that MERS lacked authority to assign the mortgage because it did not receive specific authorization from the noteholder to make the assignment. See Shea, at 1124-1125.

Like the facts before this Court, in Shea MERS was identified in the mortgage as nominee for the lender and as the mortgagee under the mortgage. See Shea, at 1124. Further, in identical language as that contained in the Mortgage *sub judice*, the mortgage in Shea provided that although MERS held only legal title,

> . . . if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to, releasing and canceling this [s]ecurity [i]nstrument.

Shea, at 1125.[17]

The Shea court therefore dismissed the mortgagor's challenge noting its prior holding that "[n]othing in Massachusetts law requires a foreclosing mortgagee to demonstrate that prior holders of record legal interest in the mortgage also held the note at the time each assigned its interest in the mortgage to the next holder in the chain." Shea, at 1125 (quoting Sullivan v. Kondaur Capital Corp., 7 N.E.3d 113 (Mass. App. Ct. 2014)).  The Shea court further found that while a noteholder has the equitable right to obtain an

---

[17] This language appears on page 3 of the Mortgage.

assignment of the mortgage,[18] absent restrictive language in the mortgage itself, MERS had the right to assign the mortgage to another party. See Shea, at 1124-1125.

Given the striking similarities between this case and Shea—where, but for the names of the parties, the dates, and amounts of the loan secured, the language of the mortgage as to MERS's rights as nominee and mortgagee are identical to that in the Mortgage—this Court likewise holds that absent restrictive language in the Mortgage, MERS was free to assign the Mortgage under Massachusetts law. See also Zullo v. HMC Assets, LLC, 16 Misc. 000413(RBF), 2017 WL 2720319, at *10-11 (Mass. Land Ct. June 22, 2017) (finding that MERS acted within its authority as mortgagee and nominee for the lender when it assigned a mortgage containing similar provisions to the Mortgage *sub judice*).

The Court's conclusion in this matter is particularly acute because the Debtor has pointed to no restrictive language in the Mortgage.   Thus, the

---

[18] Under Massachusetts law, a note and mortgage exist apart from each other and the two instruments may be held by separate entities. See Desmond v. Raymond C. Green, Inc. (In re Harborhouse of Gloucester, LLC), 505 B.R. 365, 373 (Bankr. D. Mass. 2014), aff'd, 523 B.R. 749 (1st Cir. B.A.P. 2014). Although they may be held separately, the Massachusetts Supreme Judicial Court in Eaton found that "[a mortgage] has no determinative value. If it should be assigned, the assignee must hold the interest at the will and disposal of the creditor who holds the bond." See Eaton, at 1125.  Thus, a holder of a mortgage holds that mortgage in trust for the holder of the note it secures and that noteholder has an equitable right to obtain an assignment of the mortgage." Harborhouse, at 373 (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 54 (Mass. 2011)).  In effect, what this means is that a noteholder that is not also the holder of the mortgage can assert its title in an action at law. See Harborhouse, at 373.

Debtor has failed to show that MERS was not permitted to assign the Mortgage in its capacity as nominee for the Lender.

In addition to the above arguments, in his pleading styled as "*Debtor's Brief Re. February 21, 2019 Hearing*" (17-07028-JAD, ECF No. 184), the Debtor asserts that the chain of title to the Mortgage is incomplete. Specifically, the Debtor, without submitting or producing any admissible evidence other than hearsay, argues that Capital One acquired all of GreenPoint's assets in 2006 or 2007. See *Debtor's Brief Re. February 21, 2019 Hearing*, at pgs. 8-9. The Debtor takes issue with the fact that the chain of title produced by U.S. Bank does not reflect or acknowledge any acquisition of the Mortgage by Capital One. See id.

To the Debtor's point, U.S. Bank has acknowledged that Capital One acquired the corporate entity GreenPoint in December of 2006. See *Response of U.S. Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage Pass Through Certificates, Series 2004-AR7 in Opposition to Plaintiff's Motion for Sanctions*, 17-07028-JAD, ECF No. 117, at ¶ 11. Nonetheless, the Court fails to see how Capital One's acquisition of GreenPoint invalidates the chain of title proffered by U.S. Bank. The Mortgage itself identifies MERS as the mortgagee under the agreement and as a "separate corporation that is acting solely as a nominee for Lender and **Lender's successors and assigns**." Mortgage at pg. 1, ¶ (C) (emphasis added).

Thus, even if GreenPoint transferred ownership of the Mortgage or was acquired by Capital One, MERS remained the nominee for GreenPoint's successors and/or assigns. No further document was necessary to empower

36

MERS to act as nominee for any such assignee/successor when it (MERS) subsequently assigned the Mortgage in 2009. Moreover, the Debtor has cited to no legal authority or documentary evidence to support an opposite conclusion.

Based on the foregoing, the Debtor has failed to provide any admissible evidence to challenge the chain of title asserted by U.S. Bank with respect to the Mortgage. Patel v. Shubh Hotels, LLC (In re Shubh Hotels Pittsburgh, LLC), 476 B.R. 181, 190 (Bankr. W.D. Pa. 2012)(acknowledging that summary judgment is "put up or shut up time" requiring the party opposing summary judgment to produce some evidence)(citing Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) and In re Figard, 382 B.R. 695, 706 (Bankr. W.D. Pa. 2008)).

Accordingly, the Debtor has failed to rebut U.S. Bank's showing that there is no genuine issue of material fact that U.S. Bank is the holder of, and is entitled to, enforce the Mortgage.

## C.
## U.S. Bank Has Authority to Enforce the Lost Note on Behalf of GreenPoint

Turning to the question of who is entitled to enforce the Note, it is now undisputed that the Note was lost prior to the alleged transfer to DLJ. See Wildrick Declaration at ¶¶ 12-14. The Debtor therefore argues that since the Note was lost (prior to the alleged assignment to DLJ, prior to the subsequent purported sale to Credit Suisse, and prior to the alleged deposit into the Note Trust) all subsequent transfers of the Note are invalid.  As such, it is submitted that GreenPoint remained the last holder of the Note and the Debtor argues

that U.S. Bank never acquired the right to enforce the Note as a holder in its own right.

At first blush, the Debtor's argument was worthy of further consideration. A closer inspection of it reveals that the Debtor discounts the fact that U.S. Bank is currently acting as an agent on behalf of GreenPoint with respect to the Note. Accordingly, the subsequent attempted transfers (to DLJ and others) after the Note was lost are red herrings.

Whether a downstream assignee of a mortgage note can enforce that mortgage note when it was physically lost prior to assignment was addressed in Desmond v. Raymond C. Green, Inc. (In re Harborhouse of Gloucester, LLC), 505 B.R. 365 (Bankr. D. Mass. 2014), aff'd, 523 B.R. 749 (1st Cir. B.A.P. 2014).

The Harborhouse court observed that Massachusetts General Laws chapter 106, § 3-301, which applies to negotiable instruments, provides that a person is entitled to enforce an instrument if that person is "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309." Harborhouse, at 369. The Harborhouse court further noted that a shared commonality of the alternative requirements in section 3-301 is that the person seeking to enforce the instrument must have had actual possession at one time. Harborhouse, at 370.

The first two alternatives in section 3-301 require current possession of the instrument. The third alternative does not require current possession, but

by incorporation of section 3-309 does require possession at some point in the past.

According to the statutes, the sole exception to the current possession requirement for enforceability is where a person satisfies the requirements to enforce a lost or destroyed instrument under Massachusetts General Laws chapter 106, § 3-309. See Harborhouse, at 370. Subsection (a) of section 3-309 allows a person to enforce a lost, destroyed, or stolen instrument by secondary evidence if:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Mass. Gen. Laws ch. 106, § 3-309.

Thus, "[a] party seeking to enforce a [lost] note must show that, prior to the loss or destruction of the note, [it] 1) was entitled to enforce the instrument and 2) had possession of the instrument." Harborhouse, at 371 (quoting Marks v. Braunstein, 439 B.R. 248 (D. Mass. 2010)). See also Zullo, at *7-9 (observing that as a state court, while not bound to follow the decisions of federal courts of the District of Massachusetts, including Harborhouse, "it sees no rationale to depart from their interpretation of § 3-309." Further noting that "the plain

language of § 3-309 continues to compel the person attempting to enforce a lost note to have been in possession of the note when it was lost.")

It is undisputed that presently neither GreenPoint nor U.S. Bank physically possess the lost Note and thus cannot satisfy the current possession requirement of § 3-301(i) and (ii). Nonetheless, a creditor could still satisfy § 3-301(iii)'s current possession exception if it meets the requirements of § 3-309. In other words, it must show that at the time of the Note's loss it (1) was entitled to enforce the Note and (2) had possession of the Note.

As set forth above, the Note was executed by the Scotts in favor of GreenPoint as Lender on April 26, 2004. Almost immediately thereafter, the Note was lost by GreenPoint and the Lost Note Affidavit was executed on June 2, 2004. At the time of loss, the Note was in the possession of GreenPoint and GreenPoint, as the Lender, was entitled to enforce the Note.  No evidence has been presented by Mr. Scott to rebut these facts.

Thus, the record reflects that GreenPoint qualifies for the exception to the current possession requirement by satisfying § 3-309 and is entitled to enforce the Note.[19]  The same holds true for any party acting on GreenPoint's

---

[19] With respect to the additional requirements of § 3-309, the evidence of record is that the Note was lost while in GreenPoint's possession and that GreenPoint has been unable to locate the Note despite "due and diligent search." See Lost Note Affidavit at ¶ 5. The evidence of record also reflects that the Note had not been canceled or effectively transferred and that GreenPoint had not "in any other way been divested of the ownership of or rights under the [Note] except for the loss" as described. Id. at ¶ 6. That the Note was not transferred by GreenPoint is also supported by Massachusetts General Laws chapter 106 § 3-203, which states that an instrument is "transferred" only when it is "delivered." None of the parties have disputed the fact that the Note was not "delivered" to DLJ because it was lost prior to the transactions(s) involving DLJ. Accordingly, the evidence is that the loss was not
(. . . continued)

behalf. See Eaton, at 1121 ("mortgagee" entitled to enforce includes the "person or entity then holding the mortgage and also either holding the mortgage note or ***acting on behalf of the note holder***")(emphasis and italics added). See also Zullo, at *9 (in finding that a downstream assignee of a previously lost note was not entitled to enforce, the court observed that the downstream assignee failed to show that it was acting on behalf of the holder of the note at the time of its loss).

Significantly, GreenPoint has affirmatively stated in these proceedings that U.S. Bank is acting as an agent of GreenPoint with respect to the Note. A consequence flowing from this fact is that U.S. Bank is entitled to enforce the lost Note in this capacity. In support thereof, U.S. Bank submitted to this Court a declaration by John Wildrick, Assistant Vice President of GreenPoint wherein Mr. Wildrick avers that U.S. Bank is acting on behalf of GreenPoint as the noteholder. See Wildrick Declaration at ¶ 16. Thus, the record evidence is that U.S. Bank is operating as an agent of GreenPoint and is empowered to enforce the lost Note.

In rebuttal of U.S. Bank's evidence, the Debtor argues that the Wildrick Declaration is deficient because (i) "Mr. Wildrick never alleged that he was acting in his capacity as principal" when he represented that U.S. Bank is acting on behalf of GreenPoint (see *Second Supplemental Brief of Michael David*

---

(. . . continued)

the result of a transfer or lawful seizure and the whereabouts of the Note cannot be ascertained. See Mass. Gen. Laws ch. 106 § 3-309(a)(ii) and (iii).

*Scott, the Debtor in Response to the Court's June 29, 201[9] Order* (the "Debtor's Second Supplemental Brief"), ECF No. 194 at ¶¶ 3-4); (ii) no written documents evidencing the agency relationship are attached to the declaration in violation of the statute of frauds (see Debtor's Second Supplemental Brief at ¶ 4); and (iii) that GreenPoint ceased operations when acquired by Capital One prior to the date of the Wildrick Declaration (see Debtor's Second Supplemental Brief at ¶ 16). Moreover, the Debtor argues that "Greenpoint has not provided sufficient evidence that it was in possession of the note when it was lost." See Debtor's Second Supplemental Brief at ¶ 4. Each of these arguments are addressed *ad seriatim.*

Starting with the latter, the Debtor makes an assertion that GreenPoint was never in possession of the Note, and he cites the Lost Note Affidavit by GreenPoint in support of his contention. See Complaint at pgs. 3-4. In this regard, the Debtor argues that the affiant of the Lost Note Affidavit does not expressly state that GreenPoint was in possession of the Note when it was lost. See Complaint at pg. 2.

While the Lost Note Affidavit does not say verbatim that "GreenPoint was in possession of the Note when lost," the Lost Note Affidavit does state that the Note was made payable to GreenPoint, that GreenPoint is the "owner and holder of the Note," and that although GreenPoint has made a diligent search it is unable to locate the original Note. See Lost Note Affidavit at ¶¶ 2-5. In other words, that GreenPoint had lost the Note. Moreover, seemingly rectifying the Debtor's objection, Mr. Wildrick plainly states in his Declaration that

42

"GreenPoint was in possession of the original Note when it was lost." See Wildrick Declaration at ¶ 14.

However, the Debtor now argues that Wildrick's averments regarding GreenPoint's possession of the Note are unsupported because U.S. Bank has not provided the "collateral file and computer records" showing that GreenPoint received the original Note from the attorney who conducted the closing on the mortgage loan. See *Debtor's Brief Re. February 21, 2019 Hearing*, at pgs. 7-8. In advancing his position, the Debtor does not introduce any evidence to suggest that GreenPoint was not in possession of the Note when it was lost. Instead, the Debtor, citing Deutsche Bank National Trust, as Trustee for IXIS 2006-HE3 v. Moynihan, 270 F.Supp.3d 497, 508 (D. Mass. 2017), questions the extent of the evidence submitted by U.S. Bank. See *Debtor's Brief Re. February 21, 2019 Hearing,* at pgs. 7-8.

In Moynihan, the mortgagor challenged a party's right to enforce a lost note arguing that the party had failed to show that it was ever in possession of the original note. The court therein observed that to evidence possession, the party produced a copy of the original note, affidavits of corporate officials averring possession, "a note possession history exhibit," and business records showing that the party temporarily released the original note to an agent for enforcement. See id. at 508. The Moynihan court found these documents sufficient to establish possession at the summary judgment stage. It appears that Mr. Scott cites to this list in Moynihan as support for his argument that U.S. Bank has failed to adequately document possession of the Note.

The Debtor's argument is unpersuasive. First, although Moynihan presents an example of what types of evidence can be considered as sufficient to establish possession of a lost note, it did not create a finite or "all or nothing" list of documents required to show possession.

Using Moynihan as a legal guidepost, U.S. Bank has presented similar evidence, including a copy of the original Note[20] and affidavits by corporate officials averring possession of the Note and that the Note was lost (i.e., the Lost Note Affidavit and Wildrick Declaration). Additionally, the affidavits recount the history of possession of the Note, in that the Note was executed on April 26, 2004, was in the possession of GreenPoint as of May 10, 2004, and was considered lost as of June 2, 2004. See Wildrick Declaration at ¶¶ 12-14; Lost Note Affidavit at ¶¶ 2 & 4. The Court finds that this evidence is sufficient to conclude that the Note was lost while in possession of GreenPoint.

As to the Debtor's other arguments, the Debtor argues that "Mr. Wildrick never alleged that he was acting in his capacity as principal" when he represented that U.S. Bank is acting on behalf of GreenPoint. The Debtor misunderstands the Wildrick Declaration

The Wildrick Declaration does not purport to create the agency relationship. Wildrick's statements regarding agency can be synthesized as follows: Wildrick is an Assistant Vice President of GreenPoint, he has reviewed the business records maintained by GreenPoint, and based upon those records

---

[20] The Note is stamped with a signed statement: "Certified to be a True and Correct Copy GreenPoint Mortgage [signature][.]"

he states that U.S. Bank is acting on behalf of GreenPoint. <u>See</u> Wildrick Declaration at ¶¶ 1, 2, 6, 7, & 16. Thus, Wildrick appears to be attesting to an existing agency relationship, as opposed to creating a new one.

In terms of an outright challenge to the agency relationship between GreenPoint and U.S. Bank, the Debtor has failed to supply any persuasive legal authority or evidence for his position.

Nor has the Debtor presented any admissible evidence to discount Wildrick's capacity to attest to the relationship. As discussed in <u>Moynihan</u>:

> As stated in Rule 56(c)(4), "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." To fall within the reach of the business records exception, a party must show that, "the record was made at or near the time by—or from information transmitted by— someone with knowledge." Fed.R.Evid. 803(6)(A).

<u>Moynihan</u>, at 514.

Again, Wildrick plainly states that he is an Assistant Vice President of GreenPoint and that his averments are based on his review of GreenPoint's business records.

The Debtor discounts any agency relationship between U.S. Bank and GreenPoint.  On this point, the Debtor argues that the agency is ineffective because the relationship has not been reduced to writing.  Specifically, the Debtor argues that the agency relationship is in violation of Massachusetts's Statute of Frauds (Mass. Gen. Laws ch. 259, § 1).  However, this statute provides, in pertinent part, that:

> No action shall be brought . . . [u]pon a contract for the sale of
> lands, tenements or hereditaments or of any interest in or
> concerning them . . . [u]nless the promise, contract or agreement
> upon which such action is brought, or some memorandum or note
> thereof, is in writing and signed by the party to be charged
> therewith or by some person thereunto by him lawfully authorized.

Id.

The Debtor's argument misses its mark because the agency relationship

between GreenPoint and U.S. Bank is not the type of contractual relationship

governed by Massachusetts General Laws chapter 259 § 1.   The agency

relationship at issue obviously is not a "contract for the sale of lands,

tenements or hereditaments."   U.S. Bank is merely empowered to act as an

agent of GreenPoint with respect to Note enforcement.   And, for purposes of

this Memorandum Opinion, there has been no evidence of an effective transfer

of an interest in the Note from GreenPoint to U.S. Bank after the Note was

lost.[21]  See HMC Assets, LLC v. Conley, Civ. No. 14-10321-MBB, 2016 U.S.

Dist. LEXIS 111594, at *12 (D. Mass. Aug. 22, 2016) ("BSI's authority to act on

behalf of HMC as CAM Mortgage as a servicer does not implicate a 'contract for

the sale of lands' within the meaning of chapter 259, section one.")   Thus,

GreenPoint remains the principal having the power to enforce the Note through

its agent.

---

[21]   The Court is not concluding that there could be no economic consequences
or claims by and between the putative downstream purchasers of the Note after it was
lost by GreenPoint (i.e., by DLJ and others).   By way of illustration, Article 9 of the
Uniform Commercial Code may be implicated between such parties.   See Mass. Gen.
Laws ch. 106, § 9-109(a)(3)(providing that the scope of Article 9 includes "sale of
accounts, chattel paper, payment intangibles, or promissory notes"). The Court does
not opine on these matters, either positively or negatively.

Finally, the Debtor challenges the credibility of the Wildrick Declaration by arguing that GreenPoint is no longer a viable entity. Citing to Mr. Wildrick's statement that he is an Assistant Vice President of GreenPoint, the Debtor alleges that GreenPoint has ceased operations and laid off its entire workforce. In support thereof, the Debtor offers no admissible evidence but attaches to his Second Supplemental Brief what appears to be a hearsay printout of a website which "reports" that GreenPoint was shut down by Capital One (the "Article"). Or, at least, that GreenPoint was shut down as of the date of the Article's last update five years prior (May 19, 2014). See Debtor's Second Supplemental Brief at Exhibit "B."

Evidence that would be inadmissible at trial is properly excluded from consideration on summary judgment. See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n. 13 (3d Cir. 1999). The exact origins of the Article are unclear, including the identity of its author (or "declarant"). Also unclear is the source of information in the Article. What is obvious is that the Article constitutes inadmissible hearsay. See Fed. R. Evid. 801(c) (hearsay is an out of court statement offered for the truth of the matter asserted), and Fed. R. Evid. 802 (hearsay is not admissible unless otherwise permitted by federal statute, the federal rules of evidence, or other rules prescribed by the Supreme Court). Thus, it is not appropriate for this Court to consider the Article at the summary judgment stage.

The Court reaches this conclusion because summary judgment is the time for the parties to lay their evidentiary cards on the table. When the moving

party makes its initial showing of no genuine issue of material fact, the non-moving party cannot rest on its bare, unsupported assertions in opposition. See Fed. R. Bankr. P. 7056(c) & (e) (A party asserting a genuine issue of material fact must support its assertion by citing to the record. Failure to adequately support an assertion may result in the granting of summary judgment).

U.S. Bank has made an initial showing by admissible affidavit that U.S. Bank is an agent of GreenPoint and that Wildrick is an Assistant Vice President of GreenPoint. In rebuttal, the Debtor has failed to provide any admissible evidence in support of its position that GreenPoint is closed or that Wildrick is not employed by GreenPoint. This is so despite the fact that the Wildrick Declaration was filed over a year prior to the Debtor's submission of the Debtor's Second Supplemental Brief. During that time, the Debtor has not deposed Mr. Wildrick regarding his statements, nor has the Debtor obtained or filed any affidavits from any other party who could attest to the status of GreenPoint.

The Court also recognizes that U.S. Bank acknowledged that Capital One acquired GreenPoint in December 2006. However, there has been no admissible evidence to suggest the GreenPoint does not continue to operate as an entity under Capital One's control. The only admissible evidence before the Court regarding GreenPoint's operational status is that Wildrick avers under penalty of perjury that he is currently an Assistant Vice President of GreenPoint. Accordingly, the Debtor has failed to rebut U.S. Bank's showing

that there is no genuine issue of material fact that (i) Mr. Wildrick is what he purports to be—an Assistant Vice President of GreenPoint,[22] (ii) that GreenPoint was in possession of the original Note when it was lost, and (iii) that U.S. Bank is an agent of GreenPoint.

Since U.S. Bank is an agent of GreenPoint and GreenPoint is entitled to enforce the lost Note, there is no genuine issue of material fact that U.S. Bank has standing to enforce the Note.  In so finding, the Court has duly considered the provision of Massachusetts law which provides that:

> The court may not enter judgment in favor of the person seeking enforcement [of a lost instrument] unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

Mass. Gen. Laws ch. 106, § 3-309(b).

The record reflects that Mr. & Mrs. Scott are protected against risk of loss by operation of the discharge in bankruptcy.  Specifically, in 2009 Mrs.

---

[22] The Debtor has provided no credible evidence undermining the veracity of the Wildrick Declaration.  Ethical rules relating to attorney professional conduct provide that counsel for a litigant owes a duty of candor to the Court which includes not presenting evidence he or she knows to be false, as well as a taking remedial measures if counsel later discovers that already presented evidence is false. See Pa. R. Prof. C. 3.3 ("A lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence before a tribunal . . . and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal").  There can also be other consequences if materially false testimony is provided to the Court. See, e.g., 18 U.S.C. § 1623.  In making these observations, the Court is in no way insinuating that the representations made in the Wildrick Declaration are false or misleading. The Court is merely pointing out that the representations are made to this Court under threat of serious consequences if later revealed to be knowingly untrue.

James-Scott filed for bankruptcy relief in the United States Bankruptcy Court for the District of Massachusetts at Case No. 09-13820 and received a discharge in that case. The Debtor has since commenced this bankruptcy case under chapter 7 of the Bankruptcy Code. The Debtor's bankruptcy estate has been fully administered and the Debtor received his discharge on August 26, 2019.

A discharge under the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). Applied herein, the entry of a discharge order prevents any entity from seeking recourse against Mrs. James-Scott and the Debtor personally.

Because any future entity will be barred from enforcing the Note against the Scotts personally, the Scotts are certainly adequately protected against future loss on the basis of the Note. See Moynihan, at 516 ("Here, DBNTC established that defendant is adequately protected against multiple claims in light of defendant's chapter seven bankruptcy discharge.")

Based on the foregoing, in the event that this Court would be found to have jurisdiction over the consolidated adversary proceedings, this Court would find that there is no genuine issue of material fact that U.S. Bank is entitled to enforce both the Mortgage and the Note. Accordingly, U.S. Bank would be entitled to judgment as a matter of law.

**D.**
## Summary Judgment in Favor of U.S. Bank is Consistent With Other Provisions of the Uniform Commercial Code

Part of the confusion that permeated in this case is that neither party put the lost note problem *sub judice* in the context of the Uniform Commercial Code generally.  Rather, both parties "nibbled around" the edges of the Uniform Commercial Code and left the Court to examine the bread crumbs each side had cited.  At the end of the day, the Uniform Commercial Codes does not require that the person who holds the note be the person or entity that enforces it.  Instead, the drafters of the Uniform Commercial Code recognized the realities of the lending market and provided alternatives with respect to how a negotiable instrument may be enforced.  See, e.g., Brown v. Washington State Dep't of Commerce, 359 P.3d 771, 777-780 (Wash. 2015)(a general discussion of the distinction between the rights of an owner of a note and the person entitled to enforce it); see Timothy R. Zinnecker, Extending Enforcement Rights to Assignees of Lost, Destroyed, or Stolen Negotiable Instruments Under U.C.C. Article 3: A Proposal for Reform, 50 U. Kan. L. Rev. 111 (2001);  see also Atl. Nat'l Tr. v. McNamee, 984 So.2d 375, 376-382 (Ala. 2007) and compare with Seven Oaks Enterprises v. DeVito, 198 A.3d 88, 95-100 (Conn. App. Ct. 2018).[23]

---

[23]    For a discussion of selected issues relating to mortgage notes under Articles 3 and 9 of the Uniform Commercial Code, see also Permanent Editorial Bd. For UCC, Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes (2011), 44 No.2 U.C.C.L.J. Art. 3 (Mar. 2012) and 3 Norton Bankr. L. & Prac. 3d Appendix 48-A § 48-A:27 (July 2019).

To put it plainly, under the Uniform Commercial Code, the entity having the economic benefit of a negotiable instrument may be different than the person or entity having enforcement powers.   Massachusetts' version of the Uniform Commercial Code recognizes as much as the statute provides: "A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." See Mass. Gen. Laws ch. 106, § 3-301.

This statute further provides that a "person entitled to enforce" an instrument includes "a person not in possession of the instrument" who is entitled to enforce the instrument pursuant to section § 3-309. Id.   As stated above in this Memorandum Opinion, GreenPoint, and its agent U.S. Bank, are such persons entitled to enforce the lost Note pursuant to section § 3-309.

Massachusetts law also states that the obligation of the issuer of a note flows to, among other persons, the "person entitled to enforce the instrument[.]" Id. at § 3-412.   In the event the issuer pays the "person entitled to enforce," instead of the actual holder of the note, the obligation of the issuer is discharged to the extent payment is made. Id. at § 3-602.   This provision of the Uniform Commercial Code operates to eliminate any claim of double liability by the maker of the lost note or instrument.[24]

---

[24] On September 24, 2019, the Debtor filed a document labeled "*Supplemental Authority*" (17-70045-JAD, ECF No. 618), which the Court has duly considered.   In this pleading, Mr. Scott relies upon In re Hayes, 393 B.R. 259 (Bankr. D. Mass. 2009) to argue that U.S. Bank lacks standing to enforce the Note and Mortgage.   While the Court agrees with the Hayes court's description of the problem(s) attendant with the securitization of residential mortgage loans, the opinion in Hayes does not alter the

(. . . continued)

In sum, the undisputed record in this case reflects that the Note was lost while in GreenPoint's possession.  Massachusetts General Laws chapter 106, § 3-203 states that an "instrument is transferred" when "it is delivered." Id. at § 3-203(a).  "Delivery" of an instrument occurs by the "voluntary transfer of possession" from one person to another. Id. at § 1-201(14).  It therefore appears from this state of the record that no delivery or transfer of the Note was effective from and after GreenPoint's possession, and that GreenPoint has retained the status as a "person entitled to enforce" the instrument under Article 3 of the Uniform Commercial Code.  Since U.S. Bank is GreenPoint's agent, the Court concludes that U.S. Bank's enforcement of the Note on behalf of Greenpoint is proper.  Accordingly, summary judgment dismissing the Adversary Proceeding is appropriate.[25]

---

(. . . continued)

decision set forth in the instant Memorandum Opinion.  The Court reaches this conclusion because, unlike the facts of Hayes, the record before this Court includes a chain of title reflecting assignment of the Mortgage to U.S. Bank.  In addition, the record before this Court establishes that GreenPoint may enforce the Note at issue and that GreenPoint has designated U.S. Bank as its agent to do so.  Also, in rendering the decision today, this Court observed and accepted as true that the lost Note at issue was never transferred and otherwise delivered to either DLJ and/or any of DLJ's successors or assignees.  As set forth above, this Court has concluded that the failed delivery of the Note (because it was lost) to DLJ and its successors or assigns is of no moment and results in GreenPoint being the person or entity being the "person entitled to enforce" the lost Note under the Uniform Commercial Code.  And, again, because U.S. Bank has been designated by GreenPoint to act as its agent, U.S. Bank has standing to enforce the Note on this basis.

[25]    U.S. Bank has alternatively argued that it has standing to enforce the Note and Mortgage because (a) subsequent loan modification agreements operate as enforceable promissory notes, and/or (b) the loan modifications are a novation of the Note.  U.S. Bank also argues that it has various rights under a document labeled "Correction Agreement," which allegedly enables U.S. Bank to correct any deficiencies in documentation evidencing the secured loan at issue.  Because the Court finds that

(. . . continued)

## IV.
## Conclusion

For the reasons set forth above, the Court will enter an order dismissing adversary proceedings 17-07028-JAD and 17-07050-JAD for lack of subject-matter jurisdiction.  To the extent that this Court is later found to have subject-matter jurisdiction, the Court finds that the Debtor has failed to show that any genuine issue of material fact exists as to whether U.S. Bank is entitled to enforce the Note and Mortgage. Accordingly, U.S. Bank is entitled to judgment as a matter of law.

Date:  September 25, 2019

_____
jlh

Hon. Jeffery A. Deller
United States Bankruptcy Judge

Case Administrator to serve:

Mr. Michael Scott, *Pro Se*
Brett Messinger, Esquire, Counsel to U.S. Bank
James R. Walsh, Esquire, Chapter 7 Trustee

FILED
9/25/19 2:48 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

---

(. . . continued)
U.S. Bank is entitled to enforce the Mortgage and original Note as agent for GreenPoint, the Court need not analyze these alternative arguments.

54

**APPENDIX A**

## AVERRED CHAIN OF TITLE OF THE NOTE

| Date of Transaction | Owner | Documents Evidencing Transaction | Source in the Record |
|---|---|---|---|
| April 26, 2004 | GreenPoint Mortgage Funding, Inc. ("GreenPoint") | *Adjustable Rate Note* ("Note") dated April 26, 2004 by Eunice M. James-Scott & Michael David Scott payable to the Lender, GreenPoint. | Exhibit "A" to the Amended Answer filed by U.S. Bank[i] at Adv. No. 17-07028-JAD, ECF No. 101. |
| Between May 10, 2004 and June 2, 2004 | - Loss of Original Note by GreenPoint - | *Affidavit of Lost Note* dated June 2, 2004 by Kristin Miller, Assistant Secretary of GreenPoint.[ii] | Exhibit "B" to the Wildrick Declaration, Adv. No. 17-07028-JAD, ECF No. 134. |
| | | *Declaration of John W. Wildrick* ("Wildrick Declaration") dated June 21, 2018 by John W. Wildrick, Assistant Vice President of GreenPoint | Wildrick Declaration, Adv. No. 17-07028-JAD, ECF No. 134. |
| June 29, 2004[iii] | DLJ Mortgage Capital, Inc. ("DLJ") | Letter Agreement dated June 7, 2004 between GreenPoint as seller and DLJ as purchaser for the sale of certain mortgage loans to occur on or about June 29, 2004 (the "DLJ Letter Agreement").[iv] | Exhibit "A" at pgs. 1-7 to the Supplemental Brief filed by U.S. Bank at Adv. No. 17-07028-JAD, ECF No. 167. |
| | | *Seller's Purchase, Warranties and Servicing Agreement* dated as of September 1, 2003 regarding the sale between GreenPoint and DLJ.[v] | Exhibit "A" at pgs. 8-105 to the Supplemental Brief filed by U.S. Bank at Adv. No. 17-07028-JAD, ECF No. 167. |

| July 1, 2004 | Mortgage-Backed Pass-Through Certificates, Series 2004-AR7 (the "Trust") | Pooling and Servicing Agreement dated as of July 1, 2004 identifying DLJ as seller, Credit Suisse First Boston Mortgage Securities Corp. as depositor, and U.S. Bank, National Association as Trustee.[vi] | Exhibit "C to 1" (Parts 1, 2, & 3) to the Brief filed by U.S. Bank, Case No. 17-70045-JAD, ECF No. 360. |
| | | "Deal Document" consisting of a Wells Fargo statement identifying the Scotts' mortgage loan as or in "Deal Name: CSFB-2004-AR7" | Exhibit "A" to a Motion to Extend Time to Respond and for Briefing filed by U.S. Bank at Adv. No. 17-07028-JAD, ECF No. 143. |
| | | "Loan Schedule" for CSFB Mortgage-Backed Certificates 2004-AR7 | Exhibit "A" to a Motion to Extend Time to Respond and for Briefing filed by U.S. Bank at Adv. No. 17-07028-JAD, ECF No. 146. |

[i] U.S. Bank, National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Mortgage-Backed Pass Through Certificates, Series 2004-AR7 ("U.S. Bank").

[ii] Incorrectly states that the Note was in the principal amount of $25,000. This was identified as a scrivener's error by John W. Wildrick, Assistant Vice President of GreenPoint. See Wildrick Declaration at ¶ 15.

[iii] All alleged transfers of the Note post-loss (i.e., after June 2, 2004) are referenced for informational purposes only and are not to be construed as effective for the purposes of the Memorandum Opinion as the Note was lost. As explained in footnote 19 of the Memorandum Opinion, GreenPoint did not "transfer" the Note.

[iv] The DLJ Letter Agreement provides for the sale of certain mortgage loans as identified on the schedule attached thereto. However, no such schedule was attached to the copy of the DLJ Letter Agreement provided to the Court and U.S. Bank acknowledges in its document binder (not docketed) that it has been unable to obtain a mortgage loan schedule for the transaction between GreenPoint and DLJ Mortgage Capital, Inc., the timing of Mr. Scott's loan – April 26, 2004 – coincides with the deposit date into the trust.") Thus, there is nothing in the DLJ Letter Agreement identifying the Note as being part of the transaction. Additionally, the DLJ Letter Agreement is unexecuted.

v As with the DLJ Letter Agreement (see endnote iv) there is no schedule of mortgage loans to evidence that the Note was part of the transaction between DLJ and GreenPoint.

vi The *Pooling and Servicing Agreement* by itself does not identify the Note as being one deposited into the Trust. In its Historical Evidence Binder, U.S. Bank combines the *Pooling and Servicing Agreement*, Deal Document, and Loan Schedule under one tab. The Deal Document identifies the Scotts' mortgage loan as or in "Deal Name: CSFB-2004-AR7" and assigns it an "Investor Loan Number" ending in 4487. The "Loan Schedule" includes a highlighted loan (purported to be the Scotts' loan) which "ID Number" ends in 4487, which had an original principle balance the same as the Scotts' loan, and which was originated on the same day. However, the highlighted loan is not identified by borrower name or collateral address.